313 F.2d 143
 136 U.S.P.Q. 240
 The GELLES-WIDMER COMPANY, Plaintiff-Appellee,
v.
MILTON BRADLEY COMPANY and A.C. McClurg & Company,
Defendants-Appellants.
The GELLES-WIDMER COMPANY, Plaintiff-Appellant,
v.
MILTON BRADLEY COMPANY and A.C. McClurg & Company,
Defendants-Appellees.
 Nos. 13656, 13657.
 United States Court of Appeals Seventh Circuit.
 Jan. 11, 1963, Rehearing Denied Feb. 12, 1963.
 
 Edward A. Haight, W. J. Marshall, Jr., John W. Hofeldt, Chicago, Ill., Mark R. Gale, St. Louis, Mo., for Gelles-Widmer Co.
 Sidney Neuman, B. Gordon Aller, James R. Dowdall, Chicago, Ill., for Milton Bradley Co.
 Before DUFFY, SCHNACKENBERG and KILEY, Circuit Judges.
 DUFFY, Circuit Judge.
 
 
 1
 Plaintiff sues for infringement of five copyrights for educational type flash cards and also for unfair competition. The District Court upheld the validity of the copyrights and held that defendants had infringed same. The Court denied plaintiff's claim of unfair competition.
 
 
 2
 Defendants have appealed from that part of the judgment relating to validity of the copyrights. Plaintiff has appealed from that part of the judgment adverse to it on the question of unfair competition.
 
 
 3
 Five copyrights, all relating to flash cards, are in suit; four of them deal with the four arithmetical subjects, i.e., addition, subtraction, Multiplication and division. The fifth relates to the twenty-six letters of the alphabet.
 
 
 4
 Plaintiff, whose principal place of business is in St. Louis, Missouri, was organized in 1955. Since that date, it has been engaged in the production and marketing of educational games and materials designed and marketed for the use of school children in the home and in the school.
 
 
 5
 Defendant, Milton Bradley Company, a Massachusetts corporation, was organized in 1860. For more than a century it has been engaged in the production and marketing of an extensive line of educational materials and children's games for use in the home and in the schools.
 
 
 6
 Defendant, A.D. McClurg & Company, is an Illinois corporation. It has long been a wholesale distributor to retail stores of children's games and children's activity materials. It has been a distributor for Milton Bradley Company since 1918. The only relationship between the two companies is that of buyer and seller.
 
 
 7
 The term 'flash card' is derived from the manner in which the cards are used. In actual practice, a single card is usually flashed before a child's eyes. A flash card has been defined[1] as 'A card bearing words, numbers, or pictures, to be shown in school drills to stimulate observation, or as an aid in teaching reading, arithmetic. * * *' Flash cards have been used in the standardized manner in the home and in the school, and in playing games for more than half a century.
 
 
 8
 The basic number combinations imprinted on all arithmetical cards are standard. There is shown combinations of the numbers 0 to 9. Insofar as addition, subtraction and multiplication are concerned, there are only 100 ways in which these numbers can be combined. Only 81 number combinations are possible in division, since there can be no division by Zero.
 
 
 9
 Initially, plaintiff marketed a line of educational materials known as the Dolch games.[2] These were distributed to schools and teachers. Plaintiff then selected certain of its units and by revision and providing proper instructions for parents, it was able to sell these materials in the retail market. A second distribution channel utilized by plaintiff was wholesale toy outlets.
 
 
 10
 After plaintiff had developed its retail market for the Dolch educational type materials during 1955 and 1956, defendant Milton Bradley took note of the new market outlet as is shown by its bulletin dated January 14, 1957, to its branch managers, educational salesmen and game salesmen. It directed its educational salesmen to call on department and book stores so that they might obtain their share of this 'new and potentially greater share for our educational teaching aids.'
 
 
 11
 For many years, Milton Bradley had marketed a certain type of flash card. So had others in the school supply industry. However, the toy and game industry had never included a flash card classification. Due in part, at least, to plaintiff's extensive promotion, in 1959 the toy industry, for the first time, classified 'flash cards' as an individual toy item.
 
 
 12
 In 1957, plaintiff originated and developed the several educational works which are the subject of the five copyrights here in suit. These sets were designed for use of children in the home as an aid in learning addition, substraction, multiplication, division and the alphabet.
 
 
 13
 In addition to the flash cards per se, containing the arithmetic fact problems, plaintiff drafted testing sheets which could be used for determining the development and progress the child was making. It also drafted explanations and instructions for the child and the parent, explaining the proper use of both the flash cards and the progress testing sheets.
 
 
 14
 In March 1958, plaintiff added two new series of flash cards to its Dolch line. Plaintiff undertook an textensive promotional campaign. In the first fifteen months' period, approximately one million sets of the new flash cards were sold.
 
 
 15
 The trial in the District Court extended over two weeks. Eight witnesses testified before the Court and others by deposition. Each party introduced over one bundred physical and documentary exhibits. After the filing of briefs and full oral argument, the trial court entered detailed findings of fact and conclusions of law.
 
 
 16
 A very brief summary of such findings is, plaintiff was the author of the copyrighted educational works comprising the five individual sets of flash cards; plaintiff's educational works comprise copyrightable subject matter; defendant Bradley infringed plaintiff's copyrights by photographing plaintiff's card sets, by copying and adopting plaintiff's sequence arrangements and by substantially plagiarizing plaintiff's instructions and directions, and that defendant's copying and plagiarizing was wilful and deliberate.
 
 
 17
 Defendant Milton Bradley's vice president, Taft, was in charge of research and development for that company. He designed the original 'double value' flash cards in 1953, and redesigned same in 1957. By March 1959 Taft had photographed each of plaintiff's copyrighted sets. He photographically reduced the test sheets and copied and adopted the problem numbers and sequence arrangement of the cards in plaintiff's copyrighted sets. There was a substantial copying of the instructions contained in plaintiff's sets. It should be noted that Taft did not follow any of Milton Bradley's material nor use any common source material.
 
 
 18
 The only explanation by Taft for such procedure was that he was in a hurry to get out the new sets which were to sell for one dollar each for the Toy Fair held in March 1959, and that the kind of numbers he desired to use was not available.
 
 
 19
 Taft admittedly saw the copyright notice on the boxes containing plaintiff's flash cards. Defendants' counsel argues that Taft did not think he was doing anything wrong because, in 1957, he had submitted Milton Bradley 'double value' flash cards for registration and was turned down by the Copyright Office on the ground such cards contained no copyrightable subject matter.
 
 
 20
 This is a rather lame excuse. Taft testified his company automatically applied for copyright registration on every new item put into their line. However, Taft did not submit the whole sets but merely the cover labels and the printers' sheets. Thus, the reply from the Copyright Office had no bearing on the copyrightability of plaintiff's sets which were submitted as complete units.
 
 
 21
 Defendants strongly urge that plaintiff's copyrights are invalid because they lack the creativity and originality required by the Constitution and the Copyright law. Their arguments for testing the validity of a copyright come close to judging copyrighted works by patent standards.
 
 
 22
 In Wihtol v. Wells, 7 Cir., 231 F.2d 550, this Court stated at page 553: 'The language in some court opinions seems to confuse the law of copyrights with that of patents. The Constitution itself differentiates between 'author's and their 'writings' from 'inventors' and their 'discoveries.' A copyright protects an original work and is not dependent upon novelty. * * * 'It is clear, then, that nothing in the Constitution commands that copyrighted matter be strikingly unique or novel. Accordingly, we were not ignoring the Constitution when we stated that a 'copy of something in the public domain' will support a copyright if it is a 'distinguishable variation' * * *."
 
 
 23
 In the same case we further quoted, page 553: "Accordingly, the Constitution, as so interpreted, recognizes that the standards for patents and copyrights are basically different." We also quoted with approval, page 553: " Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own.' * * * 'Since a copyright is intended to protect authorship, the essence of copyright protection is the protection of originality rather than novelty or invention."
 
 
 24
 Defendants urge no one can obtain copyright protection on the basic arithmetical combinations used in any of the sets. We do not understand the plaintiff to make any such claim. What the District Court found to be infringed was the selection, arrangements and combinations contained in plaintiff's compyrighted sets. These were more than mere compilations. We agree with plaintiff that these combinations of problems selected as they were, together with the test sheets and the instructions, were more analogous to an educational book. The commercial success of plaintiff's flash card sets does indicate they were new and useful.
 
 
 25
 Plaintiff agrees that the basic materials and arithmetical problems may have been old and in the public domain, but we agree with plaintiff's argument that the arrangement, the plan and the manner in which they were put together by the author, does constitute originality.
 
 
 26
 On the question of validity of plaintiff's copyrights, defendants make some point that the function of plaintiff's cards is solely utilitarian since they were designed specifically for use by children in the home as educational aids. This argument has no validity especially since the decision of the Supreme Court in Mazer v. Stein, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630.
 
 
 27
 Defendants urge the copyrights in suit are invalid because plaintiff permitted the use of an improper copyright notice by School Aid Products Company on a small set of flash cards directed through another market distribution. The District Court found that School Aid Products Company had the same officers, employees, agents, directors and shareholders, whose respective interests are the same as those of the officers, employees, agents, directors and shareholders of plaintiff.
 
 
 28
 The interests of the two companies were precisely the same. Defendants were in no way prejudiced by any reliance on the notice on the small sets. Taft admitted that during his year of development and research resulting in the infringing sets, he had before him the plaintiff's cards which contained a proper notice. This same defense was raised by the defendant in National Comics Publications, Inc. v. Fawcett Publications, Inc., 2 Cir., 191 F.2d 594. There, the notice of copyright gave the corporation 'Superman, Inc.' as the name of the proprietor instead of 'Detective', the proprietor in fact. The Court, by Judge Learned Hand, rejected the defense, pointing out that the two corporations had the same officers, directors and shareholders. The court said, at page 602: 'Since, however, the interests of the two corporations were precisely the same, we think that a notice was sufficient which used the dummy's name as 'proprietor."
 
 
 29
 We hold, under the circumstances of this case, the use of the notice of the copyright by School Aid Products Company did not invalidate plaintiff's copyrights.
 
 
 30
 The findings of fact by the trial court upon which were based the conclusions that plaintiff's copyrights were valid, find ample support in the record before us. For the reasons hereinbefore discussed, we hold that the copyrights owned by plaintiff and here in question were valid and infringed.
 
 
 31
 There remains the question of unfair competition as alleged by plaintiff in Count 2 of its complaint. The District Court held that plaintiff did not meet the burden which was upon it on this issue, and that the evidence failed to prove likelihood of confusion or fraud or misrepresentation as to source.
 
 
 32
 We think it suffices to say that we find ourselves in agreement with the trial court on this issue.
 
 
 33
 The judgment of the District Court is Affirmed.
 
 
 
 [1]
 Webster's New International Dictionary, 2nd Edition
 
 
 [2]
 These were reading and arithmetic materials created and named for Professor E. W. Dolch of the University of Illinois