**O. W. DONALD, Plaintiff-Appellee,**

v.

**ZACK MEYER'S T. V. SALES AND SERVICE et al., Defendants,**

**Moore Business Forms, Inc., Defendant-Appellant.**

**No. 28447.**

United States Court of Appeals, Fifth Circuit.

May 20, 1970.

Rehearing Denied July 8, 1970.

Jerry L. Buchmeyer, Dallas, Tex., for defendant-appellant.

John C. Stahl, San Antonio, Tex., for plaintiff-appellee.

Other interested parties: Charlie D. Dye, Austin, Tex., for Zack Meyer's T. V. Sales & Service.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge.

In this infringement suit a maker of business forms seeks copyright protection[1] for a common legal form.

The characters in this drama are O. W. Donald, the copyright claimant; Moore Business Forms, Inc., the alleged infringer; and Zack Meyer's T. V. Sales and Service, the innocent bystander. Act I of this play ended when the trial court found for Donald. We rewrite the script and reverse.

In 1961 Donald registered with the copyright office the following paragraph:

"Agreement"

"For value received, the undersigned jointly and severally promise to pay to the Dealer, or order, the unpaid balance shown on this invoice according to the agreed terms. Title to said Chattel, described hereon by model, make and serial number, is hereby retained, or transferred to Dealer until Customer has paid in cash all amounts owing said Dealer. Customer shall not misuse, secrete, sell, encumber, remove or otherwise dispose of or lose possession of said Chattel. There is no outstanding lien, mortgage, or other encumbrance against said Chattel. Should Customer fail to pay its indebtedness when due, or breach this contract, the entire unpaid balance shall at once become due and payable, and Dealer may without notice or demand, by process of law, or otherwise, take possession of said Chattel wherever located and retain all monies paid thereon for use of said Chattel. This Agreement may be assigned."

This language, known as the "Agreement," was printed at the bottom of standard invoice forms which Donald printed and sold to television dealers and repairmen. Moore began using this language on its forms when one of its customers ordered a set of invoices and specifically requested that this language be included on the forms. The customer

1. See 17 U.S.C.A. § 1 et seq., for the statutory provisions relating to copyright.

apparently had clipped the requested language from a form prepared by Donald. Subsequently, when Zack Meyer ordered invoice forms from Moore, Moore copied the language that its previous customer had requested.

Upon discovering Zack Meyer's forms, Donald brought suit against Moore and Zack Meyer, claiming that their use of the language contained in the "Agreement" infringed Donald's copyright. The trial court, while expressing doubt concerning the originality of the "Agreement," found that Donald had a valid copyright on the language used by Moore and that Moore had infringed Donald's copyright by printing and selling the offending forms. The court enjoined Moore from any future infringement and assessed the costs of suit against Moore as required by 17 U.S.C. A. § 116.[2] Finding that Zack Meyer had nothing whatever to do with the selection of language in the forms supplied by Moore, the court held that Zack Meyer was not liable for any copyright infringement and had been unnecessarily joined as a party defendant by Donald. Zack Meyer's counsel fees were divided equally between Moore and Donald.

Moore has appealed from the decision of the trial court, claiming that Donald's copyright is invalid for lack of originality. We agree.

It is too plain to be denied that the "Agreement" is nothing more than an ordinary conditional sales contract or chattel mortgage agreement, an instrument familiar to even the most inexperienced legal practitioner. It is the type of contract which has been published in numerous form books, many of which are themselves copyrighted. See, e. g., Am.Jur. Legal Forms and Stayton Texas Forms.

▇▇▇ Plaintiff, a non-lawyer who stated that he studied law for approximately one year, has denied that he used these prior works in preparing the "Agreement." However, considering the technical difficulties involved in drafting such a form, plaintiff's limited legal education, and his obvious access to and knowledge of these forms from his uncompleted legal studies, we have no doubt that plaintiff either consciously or unconsciously availed himself of these prior works while drafting the "Agreement." Moreover, the striking similarity in arrangement, order, and wording between plaintiff's "Agreement" and the standard forms is sufficient to compel a finding that plaintiff used these earlier works. Orgel v. Clark Boardman Co., 2 Cir. 1962, 301 F.2d 119, cert. denied, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58; Arnstein v. Porter, 2 Cir. 1946, 154 F.2d 464.

▇▇▇ Neither the existence of these earlier forms nor Donald's use of them, however, necessarily renders his paragraph ineligible for copyright protection. It is settled law that to obtain a valid copyright, as distinguished from a patent, the applicant need not show that the material in question is unique or novel; it need only be original. Gelles-Widmer Co. v. Milton Bradley Co., 7 Cir. 1963, 313 F.2d 143, cert. denied, 373 U. S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414; Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir. 1951, 191 F.2d 99. Thus a work may be protected by copyright even though it is based on a prior copyrighted work or something already in the public domain if the author, through his skill and effort, has contributed a distinguishable variation from the older works. Gelles-Widmer Co. v. Milton Bradley Co., supra; Millworth Converting Corp. v. Slifka, 2 Cir. 1960, 276 F.2d 443; Alfred Bell & Co. v. Catalda Fine Arts, supra. In such a case, of course, only those parts which are new are protected by the new copyright. Dorsey v.

2. 17 U.S.C.A. § 116. Costs; attorney's fees

"In all actions, suits, or proceedings under this title, except when brought by or against the United States or any officer thereof, full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fee as part of the costs."

Old Surety Life Ins. Co., 10 Cir. 1938, 98 F.2d 872.

■ In determining the amount of originality required it is frequently stated that the standards are minimal and that in copyright law "originality means little more than a prohibition against copying." Gelles-Widmer Co. v. Milton Bradley Co., *supra.* Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Manufacturing Co., 5 Cir. 1962, 308 F.2d 377; Alfred Bell & Co. v. Catalda Fine Arts, *supra.* Nevertheless, something more than merely refraining from outright copying is required before a new variation on an old work has sufficient originality to be copyrightable. The author must add "some substantial, not merely trivial, originality." Chamberlin v. Uris Sales Corp., 2 Cir. 1945, 150 F.2d 512, 513. The variation must be meaningful and must result from original creative work on the author's part. Amsterdam v. Triangle Publications, Inc., 3 Cir. 1951, 189 F.2d 104; Andrews v. Guenther Publishing Co., S.D.N.Y.1932, 60 F.2d 555; Jeweler's Circular Publishing Co. v. Keystone Publishing Co., 2 Cir. 1922, 281 F. 83, cert. denied, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074; McIntyre v. Double-A Music Corp., S.D.Cal.1959, 179 F.Supp. 160; Alva Studios, Inc. v. Winninger, S.D.N.Y.1959, 177 F.Supp. 265; Smith v. George E. Muehlebach Brewing Co., W.D.Mo.1956, 140 F.Supp. 729. As the court said in *Smith,*

> " 'Originality' in the above context means that the material added to what is in the public domain, must have aspects of 'novelty' and be something more than a trivial addition or variation. Cf. Chamberlin v. Uris Sales Corporation, 2 Cir., 150 F.2d 512. If what is added does not itself give some value to a public domain composition, or serve some purpose other than to merely emphasize what is present and subsisting in the public domain, it is not entitled to copyright. * * *" 140 F.Supp. at 731.

■ In the case before us we search in vain for the requisite originality in plaintiff's "Agreement." The "Agreement" contains nothing of substance which resulted from Donald's creative work. The order and arrangement of the subject matter in the "Agreement' are identical with several forms suggested in prior works. See e. g., 11 Am. Jur. Legal Forms, § 1447 (1958). The word arrangement used, while not identical, is at most only a paraphrase of various portions of earlier forms, and in copyright law paraphrasing is equivalent to outright copying. Nutt v. National Institute Incorporated for the Improvement of Memory, 2 Cir. 1929, 31 F.2d 236; Davis v. E. I. DuPont de Nemours & Co., S.D.N.Y.1965, 240 F.Supp. 612. The plaintiff did no original legal research which resulted in a significant addition to the standard conditional sales contract or chattel mortgage forms; he merely made trivial word changes by combining various forms and servilely imitating the already stereotyped language found therein. In fact it may be fairly assumed that such variations in language as did occur in plaintiff's "Agreement" were deliberately insignificant, for he plainly wanted a valid conditional sales contract or chattel mortgage, and validity was an attribute which the earlier forms had been proved through use to have.

In Amsterdam v. Triangle Publications, Inc., *supra,* the Third Circuit faced a claim to copyright protection in a similar situation. The plaintiff in that case had used several existing maps but little independent original research of his own to prepare a map upon which he claimed a copyright. In denying his map copyright protection from a claimed infringement, the court, adopting the language of the trial court, said:

> "To make his map, the plaintiff had to determine only what information he was going to use from other maps, the emphasis to be given to that information and the coloring scheme and symbols he was going to use. When he finished, his map by comparison was a new map that contained some information that was not on any one of his

base maps but was collectively on all of these maps.

"Is this exercise of judgment and discretion by the plaintiff the type of original work that is intended to be protected by the Copyright Act? I think not.

\*   \*   \*   \*   \*   \*

"\* \* \* The presentation of ideas in the form of books, movies, music and other similar creative work is protected by the Copyright Act. However, the presentation of information available to everybody, such as is found on maps, is protected only when the publisher of the map in question obtains originally some of that information by the sweat of his own brow. Almost anybody could combine the information from several maps onto one map, but not everybody can go out and get that information originally and then transcribe it into a map.

"The plaintiff's reputation as a qualified map maker cannot make copyrightable maps for him. He, or his agents, must first do some original work, get more than an infinitesimal amount of original information. With no reflection whatsoever upon the plaintiff's ability as a map maker or upon other maps published and copyrighted by the plaintiff, it seems to me that the plaintiff's map entitled 'Map of Delaware County, Pa.' is, for lack or (sic) original work, not subject to copyright." 189 F.2d at 106.

■ In the case before us Donald has contributed nothing more than the map maker in *Amsterdam*. While the "Agreement" is not identical to any single existing form, the substance of each sentence can be found in an earlier form. Thus, like the map in *Amsterdam*, Donald's form is nothing more than a mosaic of the existing forms, with no original piece added. The Copy-

right Act was not designed to protect such negligible efforts. We reward creativity and originality with a copyright but we do not accord copyright protection to a mere copycat. As one noted authority has observed, "to make the copyright turnstile revolve, the author should have to deposit more than a penny in the box." B. Kaplan, An Unhurried View of Copyright 46 (1966). In our case not even the proverbial penny has been placed in the box. Indeed the box is virtually empty. We hold, therefore, that Donald's copyright is invalid for lack of originality. Having concluded that Donald's "Agreement" was not subject to copyright, we think it goes without saying that Moore's use of the form language was not an infringement.

■ The only remaining questions concern the assessment of costs and attorney's fees. The trial court assessed the costs of suit against the losing party, Moore, as required by 17 U.S.C.A. § 116. Since we have reversed the trial court's determination on the merits, Donald, the losing party, must pay the costs as required by statute. An award of attorneys' fees is discretionary under § 116, and the trial court exercised this discretion by directing that Donald and Moore pay their own counsel fees. We see no reason to disturb this determination. The counsel fees incurred by Zack Meyer were divided by the trial court equally between Donald and Moore. We think, however, that the entire amount of this expense must be assessed against Donald. Moore has already been put to the expense of defending an infringement suit against an invalid copyright claim. It was Donald who unnecessarily joined Zack Meyer as a party defendant, and it is Donald who should bear the expense for this error.

Reversed.