M. M. BUSINESS FORMS CORPO-
RATION, Plaintiff,

v.

UARCO, INCORPORATED, Defendant.

Civ. A. No. 68–208.

United States District Court,
S. D. Ohio, E. D.

May 18, 1972.

**420**

Jerome R. Cox, Frank H. Foster, Cennamo, Kremblas & Foster, Columbus, Ohio, for plaintiff.

James C. Wood, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., Eugene J. Mahoney, Mahoney, Miller & Stebens, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the complaint filed by the plaintiff, M. M. Business Forms Corporation, and the answer of the defendant, Uarco, Incorporated. The plaintiff seeks damages and injunctive relief for an alleged infringement of his copyright. Plaintiff also alleges that the defendant is guilty of unfair competition and unfair trade practices.

The jurisdiction of this Court has been invoked under Title 28, U.S.C., § 1338. This matter was tried to the Court.

Pursuant to Rule 52, Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

1. The plaintiff, M. M. Business Forms Corporation, is a Michigan corporation. The defendant, Uarco, Incorporated, is an Illinois corporation which is registered to do business in Ohio.

2. Peter Fabbri is the President, Treasurer and principal shareholder of the plaintiff. Fabbri also owns and operates Fabbri T.V. Both businesses are operated by Fabbri at 20519 Joy Road, Detroit, Michigan. Fabbri T.V. has been in existence for approximately fifteen years and is basically a television and radio repair business.

3. M. M. Business Forms Corporation was incorporated on May 9, 1967. The nature of plaintiff's business operations consists of the designing of business forms, especially service forms for television service dealers.

4. Fabbri, as an employee of the plaintiff, prepared for the plaintiff a television service form entitled "Electronic Service Contract." Plaintiff's exhibit 1 is an example of this form. A copyright registration was obtained for the form in the plaintiff's name on May 18, 1967 by Attorney Harvey Covensky (see plaintiff's exhibit 2).

5. The "Electronic Service Contract" is a form to be utilized by television servicemen in the repairing of televisions. The form, plaintiff's exhibit 1, consists of two layers of paper and a bottom layer of cardboard with carbon paper inserted between each of the three layers. Each layer contains the same printing except that the cardboard layer has two additional side flaps to be detached, one to be given to the customer and the other to stay on the piece of equipment.

6. The form is printed so as to be divided into many different spatial areas or blocks wherein the repairman can enter the nature of the repairs performed on the television or the parts installed and the corresponding expense to be incurred by the customer. Various spaces are set out for such items as authorized repairs, miscellaneous services, deferred payment charge, sales tax, subtotal, deposit, balance and special instructions. Any repairs authorized by the customer and performed by the serviceman will be reflected by the appropriate notation on the form. Space

for the customer's name and address is provided and a line for the customer's signature. The dealer's name appears at the top right of the form.

7. Additionally, three paragraphs of printing entitled "Guarantee", "Storage Fee Provisions" and "Chattel Mortgage Provision" appear on the form. The "Guarantee" provision provides as follows:

> Because of the complex nature of electronic circuitry, predicting or preventing future breakdown is impossible. We cannot guarantee any other parts or services not performed or stated in this contract. All parts used are first quality and guaranteed for ninety days. All "same trouble" complaints must be received by us in 48 hours; otherwise subsequent repairs will be charged for at the regular prevailing rates.

The "Storage Fee Provisions" paragraph provides as follows:

> For repairs/services rendered, and value received the undersigned hereby authorizes the dealer to sell or otherwise dispose of the Chattel described above, if not redeemed by the undersigned or his duly authorized agent within sixty (60) days from date service is completed upon said Chattel. Monies received from the sale of said Chattel shall be first applied to the service charges and cost of sale, the balance of said monies shall be paid to the undersigned.
>
> If said Chattel is unsaleable, then the undersigned hereby agrees to pay Dealer a storage fee of Fifty ($.50) Cents per day commencing the 61st day from date service upon said Chattel is completed. Said storage fee is to run until the undersigned has paid Dealer for all services performed upon said Chattel, plus, Storage Fees owing to date of said payment.

The "Chattel Mortgage Provision" provides as follows:

> For repairs/services rendered, and value received the undersigned being justly indebted to the Dealer, and for

the purpose of securing payment of said debt, hereby grants to Dealer a Security Interest (Chattel Mortgage) in the above property until Customer has paid in cash all amounts owing to said Dealer, Customer shall not misuse, sell, encumber, secrete, or otherwise dispose of said Chattel during the period of payment to Dealer. There is no outstanding Lien, Mortgage or Security Interest of any kind against said Chattel. Upon failure to pay said indebtedness when due, the entire amount owing shall immediately become due and payable, and Dealer may without demand or notice exercise his right to take possession of said Chattel wherever located. Upon default, the secured party shall be entitled to reimbursement from the undersigned for all reasonable legal expenses, including Attorney Fees involved in collection of said indebtedness.

8. Fabbri prepared the Electronic Service Contract over a period of four months during the latter part of the year 1966 and the early part of 1967. Fabbri's initial attempts were made in pencil or pen and numerous revisions were made as is evidenced by plaintiff's exhibits 3 through 6.

9. Fabbri had employed many different types of television service forms in his Fabbri T.V. business prior to the preparation of the Electronic Service Contract. He was familiar with various television service forms because he had examined them in connection with his television repair business and in anticipation of preparing the form presently in issue.

10. During the four month period in which Fabbri worked on completing the Electronic Service Contract, he had in his possession other television service forms that were not of his own authorship but which he obtained from printers or other dealers. Defendant's exhibits A, B and C are three of the television service forms that were familiar to Fabbri and which he had in his possession during the composition of the

disputed form. Indeed, Fabbri had used defendant's exhibit A in his television business since 1953.

11. Defendant's exhibit A contains the following provisions:

GUARANTEE:

All work performed by qualified technicians, all materials used in repair of this set are of first quality and guaranteed for a period of ninety days after date of set repair.

### GUARANTEE

SET OWNER—Please note that the charges listed on the face of this sales ticket cover this specific repair job only. We guarantee all parts installed by us but do not guarantee or pretend to guarantee other parts in your set. If new repairs become necessary in the future due to other faulty parts in your set, they will be charged for at the regular rates. (See our statement of guarantee on the face of this sales ticket.)

### PERFORMANCE

We guarantee that your set will be restored to its normal performance upon completion of our repairs. However, in the event of dissatisfaction with set performance, we must be notified within 48 hours after set is delivered or repaired in the home.

We cannot assume responsibility for over-all set performance if we are not notified within that period because of the possibility of future defects occurring in any one or more of the hundreds of component parts in your set other than those installed by us which are covered by our regular service guarantee.

Defendant's exhibit B contains the following provisions:

### TV GUARANTEE

Due to close tolerances, high voltages and high temperatures, all of which break down parts, we cannot guarantee the set as a whole. ONLY THE WORK AND PARTS CHARGED FOR ON INVOICE ARE GUARANTEED. New sets fail at times, so you must expect some parts breakdown after use.

.  .  .  .  .

### SERVICE GUARANTEE

All work performed by qualified technicians, all materials used in repair of this set are of first quality and guaranteed for a period of ninety days after date of set repair. We guarantee all parts installed by us but do not guarantee or pretend to guarantee other parts in your set. If new repairs become necessary in the future due to other faulty parts in your set, they will be charged for at the regular rates. ANY "SAME TROUBLE COMPLAINTS" MUST BE RECEIVED WITHIN 24 HRS.

Defendant's exhibit C contains the following provision:

For value received, the undersigned jointly and severally promised to pay to the Dealer, or order, the unpaid balance shown on this invoice according to the agreed terms. Title to said Chattel, described hereon by model, make and serial number, is hereby retained, or transferred to Dealer until Customer has paid in cash all amounts owing said Dealer. Customer shall not misuse, secrete, sell, encumber, remove or otherwise dispose of or lose possession of said Chattel. There is no outstanding lien, mortgage, or other encumbrance against said Chattel. Should Customer fail to pay its indebtedness when due, or breach this contract, the entire unpaid balance shall at once become due and payable, and Dealer may without notice or demand, by process of law, or otherwise, take possession of said Chattel wherever located and retain all monies paid thereon for use of said Chattel. This Agreement may be assigned.

12. Fabbri himself drew up the aforementioned "Guarantee" provisions of the Electronic Service Contract. Fabbri maintained at trial that he did not con-

sciously copy from other forms. On direct examination, Fabbri gave the following responses to counsel's questions:

Q. Did you copy from any other forms?

A. I had knowledge of other forms since I have used them in my business. Consciously, no.

Q. Did you refer to any other forms prior to the time that you prepared the manuscripts for this form?

A. I don't quite know. I might have, but my thinking at the time was since I was going to design a form that was good, I wasn't actually too anxious to copy from any forms which I considered were no good.

Q. Had you looked at other forms? Were you familiar with the terms of other forms?

A. Oh, yes. I had looked at other forms in my business and otherwise.

Q. At those instants of time, when you were working on the form, resulting in Exhibit 1, did you have any of these other forms in front of you?

A. I don't believe so. I may have, but I don't believe I referred to them extensively, or possibly not at all.

Transcript, pages 29–30.

(a) The first sentence of the "Guarantee" provision of the Electronic Service Contract is but a paraphrase of the "TV Guarantee" provision of defendant's exhibit B and the "Performance" provision of defendant's exhibit A. The clear meaning of all three provisions is the difficulty, if not impossibility, of predicting future breakdowns because of the complex mechanical nature of a television.

(b) The second and third sentences of the "Guarantee" provision of the Electronic Service Contract are substantially identical to sentences in the "TV Guarantee" and "Service Guarantee" provisions of defendant's exhibit B and the two "Guarantee" provisions of defendant's exhibit A. This similarity is due either to the fact that Fabbri consciously copied from the forms in his possession or to the fact that Fabbri was so completely familiar with the provisions of the defendant's exhibits when he prepared the Electronic Service Contract.

(c) The final sentence of the "Guarantee" provision of the Electronic Service Contract is substantially identical to the two final sentences of the "Service Guarantee" provision of defendant's exhibit B. The only difference being that plaintiff's form increases the time for customers to register "same trouble" complaints to forty-eight hours. This substantial similarity is due to either conscious copying by Fabbri or to the fact that Fabbri was so well acquainted with defendant's exhibit B when he prepared the Electronic Service Contract.

13. Attorney Covensky prepared the "Storage Fee Provisions" and the "Chattel Mortgage Provision" of the Electronic Service Contract for the plaintiff at the request of Fabbri. Covensky had in his possession one of the service forms typified by defendant's exhibit C.

14. Covensky began his preparation of these two provisions by examining other forms and contracts of similar nature which were present in his law office. Covensky then took provisions from these sources and supplemented them with wording and syntax of his own in formulating the final language. The phrase "security interest" used in the "Chattel Mortgage Provision" was taken by Covensky from the Michigan Uniform Commercial Code. Fabbri added the phrase "repairs/services rendered" to Covensky's provisions which, with this insertion, became the "Storage Fee Provisions" and the "Chattel Mortgage Provision" of the Electronic Service Contract. Covensky did not consciously copy from defendant's exhibit C.

15. Covensky gave the completed "Storage Fee Provisions" and the "Chattel Mortgage Provision" to Fabbri in February of 1967. On February 23,

1967, Fabbri gave a handwritten copy of the Electronic Service Contract to Mr. Huntington, a salesman for the defendant. Fabbri initially wanted the defendant to print the forms for the plaintiff and that the printed forms should include a notice of a M. M. Business Forms Corporation copyright. The first proof printed by the defendant failed to conform to Fabbri's specifications. A second proof was made which Fabbri approved and he ordered twenty-five hundred copies. Fabbri received this shipment in June, 1967 but the forms did not contain a copyright notice (see plaintiff's exhibit 12). The printing of the Electronic Service Contract as it appears as plaintiff's exhibit 1 was finally secured by Fabbri from the Rotary Manifold Company of Detroit, Michigan.

16. In 1967, William L. Smith was a partner in a business in Columbus, Ohio called the Main T.V. Smith ordered service forms from the defendant in 1967. Smith had originally intended to order the forms from the plaintiff and showed plaintiff's form to a Uarco salesman who was soliciting Smith's patronage. Smith gave one of plaintiff's forms to the salesman who informed Smith that the plaintiff's copyright was meaningless. The defendant then printed twenty-five hundred service forms for Smith. Plaintiff's exhibit 17 is one of these forms.

17. The forms that the defendant printed for Smith are nearly identical to the plaintiff's Electronic Service Contract, plaintiff's exhibit 1. Only minute differences exist between the two forms, of which the following are representative: sections E and F on the plaintiff's form are labelled D and C on the defendant's; the authorized repairs section on the plaintiff's form is labelled D, but is not labelled at all on the defendant's form and the size of the print is smaller; the installment charges section of the plaintiff's form is labelled C but is not labelled at all on the defendant's; and some of the solid lines on the plaintiff's form appear as broken or dotted lines on the defendant's form.

18. Mr. Smith at all times was aware that the salesman to whom he was talking was from Uarco. The Uarco salesman identified himself and made no representations that he was from the plaintiff's company nor that he was selling the plaintiff's product. Smith knew that there was no connection between the plaintiff and the defendant. Uarco's name appeared upon the border of the forms sold to Smith (see plaintiff's exhibit 17). Smith was not confused as to the party with whom he was dealing or as to the source of the form he was ordering.

19. Robert Lewis owns and operates the Lewis Radio and Television Company in Dearborn, Michigan. In 1968, a Uarco salesman attempted to sell him printed television service forms. Lewis had previously purchased the plaintiff's forms and showed one to the defendant's salesman. Lewis declined Uarco's offer, even though the salesman quoted a purchase price that was less than plaintiff's.

20. Lewis never doubted that he was being approached by a Uarco representative. He knew that the plaintiff and the defendant were separate and distinct organizations. Lewis was not confused as to whom he was dealing with.

### Discussion

This Court's order of February 10, 1972 denying the defendant's motion for summary judgment held in part that the arrangement of vertical and horizontal lines on a business form is not copyrightable; see, 37 C.F.R. 202.1. Therefore, the issue before the Court is the copyrightability of the "Guarantee", "Storage Fee Provisions" and "Chattel Mortgage Provision" embodied in the plaintiff's form because the degree of protection afforded to a form by a copyright is determined by what is actually copyrightable and not by its entire contents. See, Jackson v. Quickslip Co., 110 F.2d 731 (2d Cir. 1940).

The law is basically clear that in order for an applicant to obtain a valid copyright he must show that the material

in question is original. Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970); Gelles-Widmer Co. v. Milton Bradley Co., 313 F.2d 143 (7th Cir 1963), cert. den., 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951). It follows that a work may be copyrightable though it is based upon materials already existent in the public domain if the author, by virtue of his own skill and effort, has contributed a distinguishable variation from the previously existing materials. Donald v. Zack Meyer's T.V. Sales and Service, 426 F.2d 1027 (5th Cir. 1970), cert. den. 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971); Gelles-Widmer Co. v. Milton Bradley Co., *supra;* Millworth Converting Corp. v. Slifka, 276 F.2d 443 (2d Cir. 1960); Alfred Bell & Co. v. Catalda Fine Arts, *supra.*

■ As to the degree of originality necessary to sustain the copyright, the Court is aware of the cases holding the standard to be one of little more than a prohibition against copying. See, *e. g.,* Gelles-Widmer Co. v. Milton Bradley Co., *supra;* Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Manufacturing Co., 308 F.2d 377 (5th Cir. 1962). The Court is in agreement with the statement of the law by the Fifth Circuit in Donald v. Zack Meyer's T.V. Sales and Service, *supra,* where the Court said:

. . . Nevertheless, something more than merely refraining from outright copying is required before a new variation on an old work has sufficient originality to be copyrightable. The author must add "some substantial, not merely trivial, originality." Chamberlin v. Uris Sales Corp., 2 Cir. 1945, 150 F.2d 512, 513. The variation must be meaningful and must result from original creative work on the author's part. Amsterdam v. Triangle Publications, Inc., 3 Cir. 1951, 189 F.2d 104; Andrews v. Guenther Publishing Co., S.D.N.Y.1932, 60 F.2d 555; Jeweler's Circular Publishing Co. v. Keystone Publishing Co., 2 Cir. 1922, 281 F. 83, cert. denied, 259 U.S. 581,

42 S.Ct. 464, 66 L.Ed. 1074; McIntyre v. Double-A Music Corp., S.D.Cal.1959, 179 F.Supp. 160; Alva Studios, Inc. v. Winninger, S.D.N.Y.1959, 177 F.Supp. 265; Smith v. George E. Muehlebach Brewing Co., W.D.Mo.1956, 140 F. Supp. 729. . . .

426 F.2d 1030.

Thus, the familiarity of Fabbri and Covensky with the earlier television service forms and Covensky's use of forms and contracts present in his law office do not in and of themselves preclude plaintiff's Electronic Service Contract from being copyrightable. The plaintiff, however, must show existence of the requisite originality. Donald v. Zack Meyer's T.V. Sales and Service, *supra.*

■ Plaintiff does shoulder the burden of proving the validity of his copyright. Van Cleef & Arpels, Inc. v. Schechter, 308 F.Supp. 674 (S.D.N.Y. 1969). However, the obtainment of a copyright registration certificate, plaintiff's exhibit 2, in effect means that a plaintiff in a copyright infringement action based upon a statutory copyright is entitled to a prima facie assumption of originality since among the facts to be set forth in the certificate is a statement of the authorship of the work and authorship connotes originality. Blazon, Inc. v. DeLuxe Game Corp., 268 F.Supp. 416 (S.D.N.Y., 1965). Upon proof by the defendant of the plaintiff's access to similar prior works, the burden of proving originality shifts back to the plaintiff. Gardenia Flowers, Inc. v. Joseph Markovits, Inc., 280 F.Supp. 776 (S.D. N.Y.1968).

*Conclusions of Law*

1. This Court has jurisdiction over the present controversy under the provisions of Title 28, United States Code, Section 1338.

■ 2. The "Guarantee" provision of the plaintiff's Electronic Service Contract is not subject to copyright protection, because it does not possess the requisite originality. The plaintiff has failed to show that a distinguishable

variation exists between the language of this provision and the language of the defendant's exhibits A and B as specifically referred to and set out in the Court's findings of fact number 12.

Fabbri had defendant's exhibits A and B in his immediate possession during the period in which he drew up the "Guarantee" provision. He did not, by his own creative efforts, add a distinguishable variation to defendant's exhibits A and B.

3. The "Chattel Mortgage Provision" of the Electronic Service Contract is not subject to copyright protection because it does not possess the requisite originality.

Attorney Covensky's testimony was that in preparing the "Chattel Mortgage Provision" he utilized similar contracts that were present at his law office and that he inserted wording of his own. The end product is a common garden variety chattel mortgage which vests title to the particular merchandise in the dealer in the eventuality that the customer defaults on his obligation to pay. Covensky admitted that he took the phrase "security interest" from the Michigan Uniform Commercial Code and that he had defendant's exhibit C in his file at the time of preparation of the provision. The Court has searched but cannot find a distinguishable variation, which is more than not merely trivial, between the "Chattel Mortgage Provision" in the Electronic Service Contract and the defendant's exhibit C.

Indeed, the defendant's exhibit C contains the identical verbiage held not to be subject to copyright protection in Donald v. Zack Meyer's T.V. Sales and Service, 426 F.2d 1027 (5th Cir. 1970). Although the word arrangement of plaintiff's "Chattel Mortgage Provision" is not perfectly identical to that of defendant's exhibit C, there is no distinguishable variation that can be attributed to the drafter's own creativity.

4. The "Storage Fee Provisions" of the Electronic Service Contract is not subject to copyright protection because it also fails to meet the originality test.

This provision allows the dealer to dispose of a particular piece of merchandise if the customer does not claim it within sixty days from the performance of the services on it and to charge the customer a per diem fee for leaving the merchandise with the dealer over sixty days. There has been no creative and meaningful original work distinguishing this simplistic legal arrangement from that which is presently subsisting in the public domain.

5. The Electronic Service Contract is, therefore, not subject to copyright protection and the plaintiff's copyright, registration number A–911765 (plaintiff's exhibit 2), is invalid for lack of originality. Such a finding precludes infringement on the part of the defendant for printing and selling a form nearly identical to the plaintiff's.

6. The defendant is not guilty of unfair trade practices nor of unfair competition. The record before the Court is clear that the defendant placed its name on the forms that it sold to Main T.V. (see plaintiff's exhibit 12). There was no confusion among the persons to whom the defendant sold or attempted to sell its forms as to the source of the product. The defendant did not deceive nor attempt to deceive the public by passing off its goods for those of the plaintiff's. See, Sears, Roebuck & Co. v. Stiffel Com., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); Tappan Co. v. General Motors Corporation, 380 F.2d 888 (6th Cir. 1967).

Whereupon, the Court determines that judgment should be and hereby is entered for the defendant, Uarco, Incorporated, on the complaint. The parties shall each bear their respective costs.