**O. W. DONALD, Plaintiff,**

v.

**UARCO BUSINESS FORMS, Defendant.**

**Civ. A. No. FS–70–C–84.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.
June 9, 1972.

Gean, Gean, & Gean by Roy Gean, Jr., Fort Smith, Ark., for plaintiff.

Hardin, Jesson & Dawson by P. H. Hardin, Fort Smith, Ark., for defendant.

### MEMORANDUM OPINION

PAUL X WILLIAMS, District Judge.

The plaintiff, O. W. Donald, brought this action under the Copyright Laws of the United States, 17 U.S.C. § 1 et seq., and the Court has jurisdiction pursuant

to 28 U.S.C. § 1338. The complaint further states that there is diversity of citizenship and that the amount in controversy exceeds $10,000.00. In this action, the plaintiff alleged infringement of his copyright, and sought damages and injunctive relief for the alleged infringement. Plaintiff also alleged unfair trade practices and unfair competition. The defendant denied the allegations of the complaint and specifically that the plaintiff had a valid copyright or that he had suffered any damages.

The case was tried to a jury and the jury returned a verdict for the plaintiff, finding that the plaintiff had a valid copyright, which had been infringed, and fixed the amount of plaintiff's damages at $7,000.00.

The defendant timely filed a motion under Federal Rules of Civil Procedure, Rule 50(b), for judgment notwithstanding the verdict and in the alternative for a new trial. The plaintiff filed a response to the motion and the matter is now pending before the court on this motion.

The defendant's motion for judgment notwithstanding the verdict reads as follows:

"Comes now defendant, Uarco, Incorporated, and moves the Court to set aside the verdict entered in the above entitled cause on May 15, 1972, and to enter judgment in favor of the defendant in accordance with the Motion for Directed Verdict made by defendant at the close of all the testimony herein, on the grounds as stated in the Motion for Directed Verdict, namely, that plaintiff's claimed copyright was invalid for lack of originality; that the subject matter which it purported to cover is in the public domain; that plaintiff's purported work did not contribute a distinguishing variation; that there was an absence of original research by plaintiff resulting in significant addition to works in existence; that there was not a meaningful variation from works in existence; that changes, if any, were trivial in

nature; that the claimed work merely combined from public domain existing words and forms with no original piece added and that plaintiff had simply paraphrased from the public domain existing works; that plaintiff had merely combined from the public domain existing words and forms with nor original piece added; and that the evidence and law in the case required a verdict to be directed in favor of the defendant."

It is now proper for the Court to consider the motion for judgment notwithstanding the verdict, even though the case was first sent to the jury. In the case of Wright v. Atchison, Topeka and Santa Fe Railway Co., 254 F.Supp. 308 (W.D.Mo.1966) the Court said:

"The fact that we sent these cases to the jury is immaterial. The practice of sending doubtful cases to the jury is commended in Green v. Reynolds Metals Company, 5th Cir. 1964, 328 F.2d 372."

See also the case of Greer v. United States, 408 F.2d 631 (6th Cir. 1969) wherein the Court held that:

"The trial judge having denied defendant's motion for directed verdict at the close of all the evidence properly reconsidered the question on motion for judgment notwithstanding the verdict. (Rule 50(b) F.R.Civ.P.)"

In determining the test to be applied as to the sufficiency of the evidence to sustain a jury verdict, a good discussion is presented in the case of Dun & Bradstreet, Inc. v. Nicklaus, 340 F.2d 882 (8th Cir. 1965). In that case the Court pointed out that both the Federal standard and the standard under the Arkansas law for testing the sufficiency of the evidence on a motion for judgment notwithstanding the verdict, requires that there be *substantial* evidence to support the verdict. Federal Rules Civil Procedure Rule 50(b) 28 U.S.C.A.

The Court also stated that:

"When the sufficiency of the evidence is questioned, the Arkansas and Federal courts will view the evidence in

the light most favorable to the plaintiff. Superior Forwarding Co. v. Garner, 236 Ark. 340, 366 S.W.2d 290; Aetna Life Ins. Co. v. McAdoo, 8th Cir., 115 F.2d 369; Stofer v. Montgomery Ward, 8th Cir., 249 F.2d 285."

■ In this case, however, even when we view the evidence in the light most favorable to the plaintiff, we cannot find any *substantial* evidence to support the jury verdict.

At the time of trial the "Agreement in question was introduced as Plaintiff's Exhibit "A" and it reads as follows: .

### "AGREEMENT"

"I hereby acknowledge receipt of the above described merchandise, with itemized repairs completed thereto. I promise to pay to the servicer, or order, in full, the amount listed as "total", on, or before the date listed as "terms". Title to said chattel, described hereon by model, make, and serial number, is hereby transferred to the servicer, for service, and or, materials used to repair said chattel. I offer this chattel in lieu of cash for services rendered, and agree not to misuse, secrete, sell, encumber, remove, or otherwise dispose of, or lose possession of said chattel, nor permit nor suffer any lien, encumbrance or charge against said chattel. There is no outstanding indebtedness, lien, mortgage, or other encumbrance against said chattel. I agree that should I fail to pay this indebtedness when due, or breach this contract, the entire unpaid balance shall at once become due and payable, and servicer may without notice, or demand, by law or otherwise, take possession of said chattel wherever located and retain all monies paid thereon for use of said chattel."

O. W. Donald, the plaintiff herein, testified at the trial that he drew up the "Agreement", and that he "authored and arranged the words" in his own manner. He testified that there were no other forms exactly like his and that he had shaped it to meet the needs of his customers; and that he had received a Certificate of Registration from the Copyright office. This was introduced as Plaintiff's Exhibit "B". Plaintiff also introduced a copy of the Defendant's alleged infringing "Agreement" with the name "Uarco Business Forms" thereon. He testified that in devising his "Agreement" he used Black's Law Dictionary, consulted with his Attorney and had various other legal forms available; and that Defendant had copied his "Agreement."

In response to questions directed to the plaintiff during the trial the following was reflected:

Q. Do you know that various form books have been published by various legal publicators of publications?

A. It was brought to my attention in the Zack Meyers [1] case that you mentioned earlier.

Q. You had brought to your attention the Am Jur Forms?

A. Yes, in the Zack Meyers case that you mentioned.

Q. You also had brought to your attention Modern Legal Forms?

A. I do not remember that. I remember the Am.Jur's. I am not saying that I did not have it brought to my attention but if it was I just do not remember it.

\* \* \* \* \* \*

Q. Did you have any other forms of other agreements that had been in general circulation that you looked and analyzed the language?

A. Yes, I did.

\* \* \* \* \* \*

Q. So of the words you have used then you admit are in the public

---

1. Plaintiff herein was also the plaintiff in the case of Donald v. Zack Meyer's T. V. Sales & Service, 426 F.2d 1027, cert. denied, 400 U.S. 992, 91 S.Ct. 459, 27 L. Ed.2d 441 (5th Cir. 1970)

domain; in other words they are in public use by the population at large, is that correct?

Q. Would you answer the question, sir?

A. I said I think all the words I used have been in public use because I got them from Black's Law Dictionary that Mr. Gean secured for me.

Defendant introduced several forms from well known legal publications and on cross examination presented them to the plaintiff, requesting that he point out any material variations between them and his "Agreement." Plaintiff continued to respond that his agreement was a *service* contract and not a sales contract.

Regardless of the type of form or agreement, the test to be applied in determining whether the author's creation is subject to copyright depends upon the degree of originality incorporated therein.

The law is basically clear, and the parties herein agree, that in order for the applicant to obtain a valid copyright it must be shown that the material in question is original. Roth Greeting Cards v. United Card Co., 429 F.2d 1106 (9th Cir. 1970); Gelles-Widmer Co., v. Milton Bradley Co., 313 F.2d 143 (7th Cir. 1963), cert. denied, 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963); Alfred Bell & Co. v. Catalda Fine Arts, 191 F.2d 99 (2d Cir. 1951).

Lack of originality is fatal to the copyright registration: Donald v. Zack Meyer's T. V. Sales and Service, 426 F.2d 1027 at 1031 (5th Cir. 1970) Cert. denied, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441; Amsterdam v. Triangle Publications, 189 F.2d 104 at 106 (3rd Cir. 1951).

The "Agreement" at issue in the *Zack Meyer's case* was as follows:

### "Agreement"

"For value received, the undersigned jointly and severally promises to pay to the Dealer, or order, the unpaid balance shown on this invoice according to the agreed terms. Title to said Chattel, described hereon by model, make and serial number, is hereby retained, or transferred to Dealer until Customer has paid in cash all amounts owing said Dealer. Customer shall not misuse, secrete, sell, encumber, remove or otherwise dispose of or lose possession of said Chattel. There is no outstanding lien, mortgage, or other encumbrance against said Chattel. Should Customer fail to pay its indebtedness when due, or breach this contract, the entire unpaid balance shall at once become due and payable, and Dealer may without notice or demand, by process of law, or otherwise, take possession of said Chattel wherever located and retain all monies paid thereon for use of said Chattel. This Agreement may be assigned."

At the trial this "Agreement" was introduced as Defendant's Exhibit 1. Attorney for the defendant presented this Exhibit to the plaintiff along with Plaintiff's Exhibit "A" (Agreement at issue herein) and line by line asked plaintiff to point out any *material* variation between the two Exhibits but plaintiff was unable to do so. The Court in *Zack Meyer's* held the above quoted "Agreement" lacked the originality necessary for a valid copyright, and upon comparison of the two Exhibits and consideration of Plaintiff's testimony we reached the same conclusion concerning Plaintiff's "Agreement" in this cause. Although the arrangement of words in Plaintiff's "Agreement" herein is not absolutely identical with that in the *Zack Meyer's* case, there is no distinguishable variation, which is recognizably the plaintiff's own, reflected in the "Agreement."

Plaintiff's brief in opposition to the Defendant's motion for judgment notwithstanding the verdict cites the case of Dan Kasoff, Inc. v Palmer Jewelry Mfg. Co., D.C., 171 F.Supp. 603; on page 606 of that opinion the Court called attention to the fact it is necessary that

"the author contribute more than a mere trivial variation, something recognizably his own," must be supplied in order to have a valid copyright.

In determining the amount of originality required the Court in Donald V. Zack Meyer's, supra, 426 F.2d on page 1030 said:

"Nevertheless, something more than merely refraining from outright copying is required before a new variation on an old work has sufficient originality to be copyrightable. The author must add 'some substantial, not merely trivial, originality.' Chamberlin v. Uris Sales Corp., (2 Cir. 1945) 150 F. 2d 512, 513. The variation must be meaningful and must result from original creative work on the author's part. Amsterdam v. Triangle Publications, Inc., (3 Cir. 1951) 189 F.2d 104; Andrews v. Guenther Publishing Co., S.D.N.Y.1932, 60 F.2d 555; Jeweler's Circular Publishing Co., v. Keystone Publishing Co., (2 Cir. 1922) 281 F. 83, cert. denied, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074; McIntyre v. Double-A Music Corp., (S.D.Cal. 1959) 179 F.Supp. 160; Alva Studios, Inc. v. Winninger, (S.D.N.Y.1959), 177 F.Supp. 265; Smith v. George E. Muehleback Brewing Co., (W.D.Mo. 1956), 140 F.Supp. 729. As the court said in Smith:

"'Originality' in the above context means that the material added to what is in the public domain, must have aspects of 'novelty' and be something more than a trivial addition or variation. Cf. Chamberlin v. Uris Sales Corporation, 2 Cir., 150 F.2d 512. If what is added does not itself give some value to a public domain composition, or serve some purpose other than to merely emphasize what is present and subsisting in the public domain, it is not entitled to copyright. * * * 140 F.Supp. at 731."

As the Court stated in the Zack Meyer's case we too "search in vain for the requisite originality in plaintiff's 'Agreement'".

Although, 17 U.S.C. § 11 provides for the registration and issuance of a copyright certificate to anyone who fills the form out properly, there are other provisions in the law which control the validity of the copyright. 17 U.S.C. § 8, provides that no copyright shall subsist in any work which is in the public domain. The use of the word "subsist" recognizes that certificates will be issued through a registration procedure in which no examination occurs, but that such a certificate shall not remain in force if the subject matter which it purports to cover is in the public domain. See Donald v. Zack Meyer's, supra; Davis v. E. I. Dupont De Nemours & Co., 240 F.Supp. 612 (S.D.N.Y.1965).

In the Zack Meyer's case the Court held, among other things, that O. W. Donald had simply paraphrased existing works already in the public domain, citing 11 Am Jur, Legal Forms, Section 1447, which was also introduced as an Exhibit in the case at bar. We find no distinguishing variation that would remove the plaintiff's "Agreement", at issue in this cause, from the public domain.

In the case of M & M Business Forms Corp. v. UARCO, Inc., United States District Court, Southern District of Ohio, Eastern Division, decided on May 18, 1972, the Court had before it the validity of the Plaintiff's copyright. Plaintiff had prepared a television service form entitled "Electronic Service Contract" and a copyright registration was obtained in the plaintiff's name.

There were three paragraphs of printing appearing on the "Electronic Service Contract" which read as follows:

"GUARANTEE PROVISIONS"

"Because of the complex nature of electronic circuitry predicting or preventing future breakdown is impossible. We cannot guarantee any other parts or services not performed or stated in this contract. All parts used are first quality and guaranteed for ninety days. All "same trouble" com-

plaints must be received by us in 48 hours; otherwise subsequent repairs will be charged for at the regular prevailing rates."

## "STORAGE FEE PROVISIONS"

"For repairs/services rendered, and value received the undersigned hereby authorizes the dealer to sell or otherwise dispose of the Chattel described above, if not redeemed by the undersigned or his duly authorized agent within sixty (60) days from date service is completed upon said Chattel. Monies received from the sale of said Chattel shall be first applied to the service charges and costs of sale, the balance of said monies shall be paid to the undersigned.

"If said Chattel is unsaleable, then the undersigned hereby agrees to pay Dealer a storage fee of Fifty ($.50) Cents per day commencing the 61st day from date service upon said Chattel is completed. Said storage fee is to run until the undersigned has paid Dealer for all services performed upon said Chattel, plus, Storage Fees owing to date of said payment."

## "CHATTEL MORTGAGE PROVISION"

"For repairs services rendered, and value received the undersigned being justly indebted to the Dealer, and for the purpose of securing payment of said debt, hereby grants to Dealer a Security Interest (Chattel Mortgage) in the above property until Customer has paid in cash all amounts owing to said Dealer, Customer shall not misuse, sell, encumber, secret, [sic] or otherwise dispose of said Chattel during the period of payment to Dealer. There is no outstanding Lien, Mortgage or Security interest of any kind against said Chattel. Upon failure to pay said indebtedness when due, the entire amount owing shall immediately become due and payable, and Dealer may without demand or notice exercise his right to take possession of said Chattel wherever located. Upon default, the secured party shall be entitled to reimbursement from the undersigned for all reasonable legal expenses, including Attorney Fees involved in collection of said indebtedness.

The Court found that Peter Fabbri, President of M & M Business Forms Corporation, prepared the "Electronic Service Contract" over a period of four months and that he studied many different types of television service forms prior to the preparation of "Electronic Service Contract." Mr. Fabbri testified at the trial that he did not consciously copy from any of the other forms. In deciding the case, the Court considered each paragraph of the "Electronic Service Contract" separately and held: "The 'Guarantee' provision of the plaintiff's Electronic Service Contract is not subject to copyright protection, because it does not possess the requisite originality."

He also made the same determination as to the "Chattel Mortgage Provision" and the "Storage Fee Provisions," finding that neither of them possessed the requisite degree of originality in order to secure a valid copyright.

The provisions under consideration in the *M & M Business Form Corp.* case, found lacking in the originality necessary for copyright, were service, not sales agreements, and very similar to the "Agreement" at issue herein. Plaintiff has cited no case in which the copyright on a form having no more originality than Plaintiff's "Agreement" has been upheld by any Court.

There was no evidence indicating any unfair trade practices or unfair competition in this case. There was no evidence establishing any confusion between the parties. There was no attempt by the defendant to "palm off" its product as the plaintiff's. In fact, the alleged infringing business form, clearly had Defendant's name and mark upon it and therefore negates any possibility of "palming off."

In the case of Tappan Company v. General Motors Corporation, 380 F.2d

888 (6th Cir. 1967); The Plaintiff, holder of two design patents covering electric cooking ranges, sought injunctive relief and damages from the Defendant, alleging both patent infringement an unfair competition. The Court held that the patents were not infringed and that where the accused ranges were conspicuously marked with the manufacturer's trade names and trademarks before being offered to the public, no buyer could be confused as to the source of the merchandise, and that no intent to deceive could be imputed to the manufacturer. See also—Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); and Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed. 2d 669 (1964).

We do not reach the issue of damages since we find that the Plaintiff did not have a valid copyright and suffered no unfair competition.

In accordance with this opinion, judgment will be entered for the Defendant notwithstanding the jury verdict for the plaintiff.