ORIGINAL APPALACHIAN ART-
WORKS, INC., A Georgia Corpo-
ration, Plaintiff-Appellee,

v.

The TOY LOFT, INC., A Georgia Corpora-
tion; Lawson Enterprises Unlimited,
Inc., A Georgia Corporation; and A.
David Lawson, an individual, Defend-
ants-Appellants.

No. 81–7214.

United States Court of Appeals,
Eleventh Circuit.

Sept. 3, 1982.

Pitts & Kesterson, James C. Kesterson, Knoxville, Tenn., for defendants-appellants.

Deal, Birch, Orr & Jarrard, Stanley F. Birch, Jr., Gainesville, Ga., Newton, Hopkins & Ormsby, William H. Needle, L. Ray Patterson, School of Law, Emory University, Atlanta, Ga., for plaintiff-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and PITTMAN *, District Judge.

KRAVITCH, Circuit Judge:

The Toy Loft appeals from judgment of the district court, 489 F.Supp. 174, entered after a bench trial, granting Original Appalachian Artworks [OAA] damages for copyright infringement, injunctive relief against future copying and against infringement of trade dress, and $10,000 in attorneys' fees. The Toy Loft asserts that the trial court erred in finding that OAA had a valid copyright and that the Toy Loft had infringed both that copyright and OAA's distinctive "trade dress," and also erred in awarding attorneys' fees. For the reasons stated below, we affirm.

## I. Background

Xavier Roberts president of plaintiff-appellee OAA, has an extensive background in art and soft sculpture. In 1976 and 1977 while employed as the manager of Unicoi State Park's craft shop, Roberts became acquainted with Martha Nelson, a local artist who made soft-sculpture dolls. Roberts bought several of Ms. Nelson's dolls for resale at the craft shop, but due to a subsequent dispute she refused to sell Roberts any additional dolls. As a result, in May 1977 Roberts and an artist friend, Debbie Morehead, began making and selling a soft-sculpture doll of their own. During the ten months between May, 1977 and January, 1978, Roberts sold approximately 80 soft-sculpture dolls of varying designs. Approximately half of these dolls contained no copyright notice; the other half had a notice on a tag pinned to the doll.

According to Roberts, he and Morehead were attempting to develop a distinctive soft-sculpture doll during this period, and by February 1978 they had produced what they considered to be an acceptable prototype for general sale. Roberts began producing and selling dolls based on this prototype, all of which carried some copyright notice. The early production dolls had a pinned-on notice which was later replaced with a sewn-in notice. Roberts incorporated OAA in the fall of 1978, and on June 1, 1979 obtained a copyright certificate for the dolls.[1]

OAA's dolls, sold under the trade name "The Little People," have achieved considerable commercial success, in part due to a unique combination of marketing techniques. These techniques include treating the dolls as "babies" who are "adopted" rather than sold; providing the customer with a "birth certificate" and "Official Adoption Papers" which include an "oath of adoption" to be subscribed to by the buyer; individually naming each doll that is produced and communicating this fact by means of a name tag affixed to each doll's clothing; sending the buyer a birthday card for his "little person" on the first anniversary of the date of sale; and signing each doll's derriere "Xavier" while advertising that the dolls are a "limited signed edition."

Appellant David A. Lawson, owner of the Toy Loft, first became aware of OAA's products when he saw them displayed for sale at Hartsfield Airport in Atlanta in late 1978 or early 1979. The Toy Loft began selling the OAA dolls in May, 1979, after receiving an order of dolls and details of the marketing scheme. Subsequently, Lawson discovered that Martha Nelson had made soft-sculpture dolls prior to OAA, and apparently decided to reap some of the doll business for himself. In November, 1979, Lawson began selling dolls using marketing techniques similar to OAA's, including of-

---

* Honorable Virgil Pittman, U. S. District Judge for the Southern District of Alabama, sitting by designation.

1. Unlike patent law, copyright registration is not a prerequisite to copyright protection. Rather, an author has a valid copyright in an original work at the moment it is created—or, more specifically, fixed in any tangible medium of expression. 17 U.S.C. § 102(a). In order to protect his copyright, an author must attach a copyright notice to any copies of his work that are "published" as that term is defined in § 101 of the Copyright Act, 17 U.S.C. § 101. See 17 U.S.C. § 401. Registration is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and also is a prerequisite to certain infringement remedies. See generally 17 U.S.C. §§ 408, 411, and 412.

fering the dolls for "adoption," providing a "birth certificate," and signing the dolls' derrieres "Mama Stork" with a registration number. Lawson's dolls, which are called "The Love Me Babies," have copyright notices affixed by means of a sewn-in tag.

Upon discovering that Lawson was selling his own soft-sculpture dolls, OAA sued for copyright infringement, infringement of trade dress, and unfair competition. After a bench trial, the district court found that the OAA dolls were copyrightable "original works" under the copyright laws; that the 1978 dolls were "new works" so that the sale of the 1977 dolls without proper copyright notices did not invalidate the copyright in the 1978 dolls; that Lawson and the Toy Loft had infringed OAA's copyright; and that Lawson had also infringed OAA's distinctive "trade dress" and thus had committed unfair competition.

## II. Copyright Infringement

■ OAA's primary claim below was that Lawson had infringed its copyright in its dolls. In order to prove a claim of infringement a plaintiff must show (1) that he owns a valid copyright in the work and (2) copying by the defendant. *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1375 (5th Cir. 1981); *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978). *Accord Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981); *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092–93 (2d Cir. 1977)). *See generally* 3 M. Nimmer, Copyright § 13.07 (1981). Lawson claims on appeal that neither of these elements was proven.

### A. Validity of OAA's Copyright

#### 1. The Originality Requirement

Lawson's first challenge to the validity of OAA's copyright is that the OAA dolls are "copies" of the pre-existing Martha Nelson dolls and thus lack the originality essential to copyright protection.[2] We disagree.

■ The central requirement of copyright protection for a work is that the work must have an element of originality. 17 U.S.C. § 102 (copyright protection extends to "original works of authorship"); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 897 (5th Cir. 1972); *Donald v. Zack Meyer's T.V. Sales and Service*, 426 F.2d 1027, 1029 (5th Cir. 1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971). *Accord Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1061 (9th Cir. 1981); *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908–11 (2d Cir. 1980). *See generally* 1 M. Nimmer, Copyright § 2.01 (1981). Although the originality concept defies exact definition, courts generally agree that "originality" for copyright purposes is something less than the novelty or uniqueness necessary for patent protection. *Durham Industries, supra*, 630 F.2d at 910; *Imperial Homes, supra*, 458 F.2d at 897; *Zack Meyer's, supra*, 426 F.2d at 1029; Nimmer, *supra*. The test of originality variously has been characterized as "modest," "minimal," and "a low threshold." *Durham Industries, supra*. Perhaps the most firmly entrenched definition of originality, however, is that first formulated by the Second Circuit and later adopted by the former Fifth:

> All that is needed ... is that the "author" contributed more than a "merely trivial" variation, something recognizably "his own." Originality in this context "means little more than a prohibition of actual copying." No matter how poor artistically the "author's" addition, it is enough if it be his own.

*Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 191 F.2d 99, 103 (2d Cir. 1951). *See Zack*

---

2. All parties to this appeal agree that under either the 1909 or 1976 Copyright Acts soft-sculpture dolls are copyrightable "works of art." *See* 17 U.S.C. § 107 (1976 Act: copyright extends to "pictorial, graphic, and sculptural works" which are defined in § 101 as "two and three-dimensional works of fine, graphic, or applied art."); *Kamar International, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059, 1060–61 (9th Cir. 1981) (soft-sculpture stuffed animals copyrightable under 1909 Act); *R. Dakin & Co. v. A&L Novelty Co.*, 444 F.Supp. 1080 (E.D.N.Y. 1978) (stuffed toy animals copyrightable under 1909 Act).

*Meyer's, supra,* 426 F.2d at 1030; *Tennessee Fabricating Co. v. Moultrie Manufacturing Co.,* 421 F.2d 279, 281–82 (5th Cir. 1970) (quoting language from *Bell* ).

■ Here the trial court stated in its findings of fact that OAA's dolls were "substantially different" from the earlier Nelson dolls, detailing several differences in design.[3] This finding was supported by a review of the exhibits and record and was not clearly erroneous.[4] We agree with the trial court, moreover, that these differences supplied the minimal degree of originality necessary for copyright protection. The OAA dolls were more anatomically correct than the Nelson dolls in several respects and were proportioned more like an infant. These variations on the idea of a human-figure soft-sculpture doll, an idea admittedly taken from the Nelson dolls,[5] were the original work of Roberts and Morehead and

were more than merely trivial variations. *See Puddu v. Buonamici Statuary, Inc.,* 450 F.2d 401, 402 (2d Cir. 1971) (although copyrighted statues "bore a strong family resemblance" to prior uncopyrighted works, "the differences suffice[d] to satisfy the modest requirement of originality").

## 2. Copyright Notice

■ Lawson's second argument is that OAA has lost its copyright due to inadequate notice. According to Lawson, the dolls produced and sold by OAA in 1978 were copies of the dolls made by Roberts and Morehead in 1977. The dolls, therefore, were first "published"[6] in 1977, and because the 1977 dolls concededly lacked proper copyright notices under the 1909 Copyright Act, any copyright OAA may have had in the dolls is now irretrievably lost.

---

3. The trial court's order stated in part:

With regard to the plaintiff's dolls, the defendants' dolls, and the dolls created by Martha Nelson prior to February, 1978, the court makes the following observations and findings. Although the Martha Nelson dolls and the plaintiff's pre-1978 experimental models were somewhat similar, the Martha Nelson dolls and the plaintiff's dolls as they exist today (and as they have existed since February, 1978) are generally dissimilar in the following respects: facial expression (plaintiff's dolls look like babies while the Nelson dolls more resemble old people due to puckered chin caused by secondary stitching below mouth); shape of nose (plaintiff's dolls' noses go straight across while the Nelson dolls' noses have an inverted-Y shape); hands (fingers on the Nelson dolls are generally elongated while the fingers on plaintiff's dolls are shorter and more anatomically correct); buttocks (plaintiff's dolls are more anatomically correct due to presence of center seam); eyes (plaintiff's dolls' eyes are painted in high gloss paint with eyebrows as opposed to Nelson dolls having no eyebrows and eyes painted with flat-finish paint); plaintiff's dolls have simulated elbows while Nelson dolls do not; Nelson dolls have ears while plaintiff's dolls do not; Nelson dolls are not signed on their bottoms.

4. Although neither the former Fifth Circuit nor the Eleventh Circuit has addressed the issue, both the Second and Ninth Circuits have held that findings concerning the similarity of two works are findings of fact. *See International Luggage Registry v. Avery Products Corp.,* 541 F.2d 830, 831 (9th Cir. 1976); *Ideal Toy Corp.*

*v. Fab-Lu Limited,* 360 F.2d 1021, 1022 (2d Cir. 1966) (determination of "substantial similarity" for purposes of infringement is a factual question); *Williams v. Kaag Manufacturers, Inc.,* 338 F.2d 949, 951 (9th Cir. 1964) (finding that two works were "similar in some respects" but not "the same" was a finding of fact). In light of the Supreme Court's recent holding in *Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), that a trial court's finding on discriminatory intent is a finding of fact subject to the clearly erroneous standard if the court applies the correct legal test, we conclude that the Second and Ninth Circuits have properly characterized the status of trial court findings on issues of similarity in copyright cases. *See generally* Nimmer, *supra,* at § 12.12.

5. Neither the idea of a soft-sculpture human-figure doll, nor the process of soft sculpture is copyrightable. 17 U.S.C. § 102(b).

6. 17 U.S.C. § 101 defines "publication" as:

the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

Roberts concededly offered his first dolls for sale to the public in 1977 and hence "published" them at that time.

While the publication of a work without a proper copyright notice under the 1909 Act was considered a dedication to the public and resulted in a forfeiture of copyright, see 37 C.F.R. § 202.2(a)(2), the new Act has changed this result considerably by providing liberal savings provisions for copyright protection even if the copyright notice is omitted entirely from a work. Given this background, the initial question in assessing Lawson's argument is whether the dolls at issue here were first published in 1977 or 1978. If the 1978 dolls are merely copies of the 1977 dolls, as Lawson suggests, then the notice provisions of the 1909 Act apply and the publication of the dolls without statutorily correct copyright notices would result in forfeiture of copyright protection. See 37 C.F.R. § 202.2 (1981). On the other hand, if the 1978 dolls are new works, as OAA contends, then the 1976 Act notice provisions control, and the lack of proper notice on some early 1978 production dolls would not necessarily bar OAA's infringement action.

■ The trial court found that the 1978 dolls differed from the 1977 dolls, and despite the Toy Loft's protestations to the contrary, our review of the evidence and burdens of proof convinces us that this conclusion was not clearly erroneous. While the burden of persuasion as to the validity of the copyright rests with the plaintiff in an infringement action, once he produces a copyright certificate he establishes a prima facie case of validity of his copyright and the burden of production shifts to the defendant to introduce evidence of invalidity. See 17 U.S.C. § 410(c); *Durham Industries, supra,* 630 F.2d at 908; *American International Pictures, Inc. v. Foreman,* 576 F.2d 661, 665 (5th Cir. 1978); Nimmer, *supra* at § 12.11[B]. Lawson asserts that he carried this burden, relying principally on the testimony of Debbie Morehead that the 1978 dolls and 1977 dolls were "basically the same." Lawson also asserts that some type of negative inference should attach to OAA's failure to produce a "typical" example of the 1977 dolls for comparison purposes.

We reject these arguments. Although Morehead testified that the 1977 and 1978 dolls were "basically" the same, she also admitted on cross-examination that the 1977 dolls were undergoing constant improvement. This admission coincided with the oral testimony of Roberts and Linda Allen, an OAA vice president, that the 1977 dolls were "experimental" dolls which were undergoing constant development in search of a perfect prototype. Even were we to find that Lawson had carried his burden of production on this issue, the testimony of Roberts, Allen, and Morehead together with other evidence would be sufficient to uphold the trial court's finding on the ground that OAA had carried its burden of persuasion. The record clearly establishes, for example, that it was not until February 1978 that Roberts had a doll which he considered suitable as a pattern for all future dolls. OAA, moreover, did introduce into evidence two dolls made during the Christmas season of 1977. Although Lawson contends these dolls were not typical of the other 1977 dolls, Morehead testified that one of these dolls, plaintiff's exhibit 19, was also "basically the same" as the 1978 dolls. Morehead, therefore, presumably saw little difference between the 1977 dolls in general and exhibit 19, characterizing all as "basically the same" as the 1978 dolls. Given the testimony of Roberts and Allen that the 1977 dolls were experimental, the admission of Morehead on cross-examination that the 1977 dolls were undergoing constant change, the fact that Roberts did not settle on a prototype until February 1978, and the court's own comparison of the dolls, we cannot say that the trial court's factual finding that the 1978 dolls differed from the 1977 dolls and thus were "new works" subject to the 1976 Copyright Act was clearly erroneous.

■ Having concluded that the new Act applies to OAA's dolls, we next must assess whether OAA lost its copyright protection due to inadequate notice. Lawson contends that the early copyright notices on the 1978 dolls were improper because the notices were placed on detachable name tags. Pri-

or to the 1978 Act, such detachable notices were defective and constituted improper notice under the 1909 copyright law. *See* 37 C.F.R. § 202.2(b)(9) (1981) (copyright notice on detachable tag does not meet requirements of proper notice for a work published before January 1, 1978).[7] Under the new Act, however, publication of copies of a work with defective notice does not necessarily impair an author's copyright protection. Section 405 of the new Act, 17 U.S.C. § 405, provides in part:

(a) Effect of Omission on Copyright.— The omission of the copyright notice prescribed by sections 401 through 403 from copies or phonorecords publicly distributed by authority of the copyright owner does not invalidate the copyright in a work if—

(1) the notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made before or is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered; or

(3) the notice has been omitted in violation of an express requirement in writing that, as a condition of the copyright owner's authorization of the public distribution of copies or phonorecords, they bear the prescribed notice.

The trial court, obviously relying on the savings provision of subsection (a)(2), found that OAA's copyright in the 1978 dolls was not invalid because OAA registered within five years of publication. This finding, however, is incomplete. In order to retain copyright protection under § 405(a)(2), the author must not only register within five years of publication, but also make a "reasonable effort" to add notice to all copies distributed without proper notice. The trial court failed to make any finding on this second requirement, and our review of the record revealed no evidence of such an effort. We cannot sustain the validity of OAA's copyright, therefore, on the ground articulated by the trial court.

The evidence provides a basis for sustaining the copyright on an alternative ground, however. Under § 405(a)(1), a copyright is not invalid if the notice has been omitted from only a "relatively few" copies of the work. Here the evidence showed that up to the time of trial OAA had sold approximately 40,000 dolls. The testimony of Roberts indicated that the sewn-in copyright notices were used no later than the fall of 1978. Plaintiff's exhibit 48, a ledger recording the sale of every doll from May 1977 through October of 1978 revealed that approximately 400 dolls were sold by Roberts from February through October of 1978. From this evidence it is apparent that only approximately 1% of OAA's total doll sales at the time of trial lacked the sewn-in copyright notice. We conclude that this percentage meets the "relatively few" test of § 405(a)(1) and accordingly hold that OAA's copyright is not invalid due to improper notice.

### 3. Fraud and Unclean Hands

Lawson's third defense is that Roberts is guilty of fraud and unclean hands in failing to supply certain relevant information on the copyright application. Specifically, Lawson cites Roberts' failure to list

---

7. This regulation stemmed from several court cases holding that the requirement in the 1909 Copyright Act that the notice be "affixed" to the work required some sort of permanent attachment which was not fulfilled by a detachable tag. *E.g., Gardenia Flowers, Inc. v. Joseph Markovits, Inc.*, 280 F.Supp. 776, 783 (S.D.N.Y. 1968). The 1976 Copyright Act apparently liberalized certain of the requirements of notice from the 1909 Act by providing that "the notice shall be affixed to the copies in such manner and location as to give *reasonable notice* of the claim of copyright." *See* Latman, The Copyright Law 147 (5th ed. 1979). Because we find that the savings provisions of 17 U.S.C. § 405(a)(1) protected OAA's copyright despite use of a detachable tag notice on some copies, we need not address whether such a notice would meet the "affixed ... in such a manner [ ] as to give reasonable notice of the claim of copyright" requirement under the 1976 Act.

Ms. Morehead as a co-author and his failure to complete item six on the copyright application headed "Compilation or Derivative Work" as the fraudulent omissions which make OAA's copyright unenforceable.

In *Russ Berrie & Co., Inc. v. Jerry Elsner Co.*, 482 F.Supp. 980 (S.D.N.Y.1980), the court found that the copyright holder had intentionally failed to inform the copyright office that his copyrighted stuffed gorilla was based on a pre-existing Japanese gorilla, and held that "the knowing failure to advise the copyright office of facts which might have occasioned a rejection of the application constitutes reason for holding the copyright invalid." *Id.* at 988. Similar situations occurred in *Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I.1976) (unexplained omission of pre-existing work coupled with other misleading conduct made copyright unenforceable); and *Ross Products, Inc. v. New York Merchandise Co.*, 242 F.Supp. 878 (S.D.N.Y. 1965) (failure to indicate prior publication of work in Japan raised issue of whether omission was purposeful thus invalidating copyright).

While these cases establish that omissions or misrepresentations in a copyright application can render the registration invalid, a common element among them has been intentional or purposeful concealment of relevant information. Where this element of "scienter" is lacking, courts generally have upheld the copyright. *See Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) ("innocent misstatement . . . in the affidavit and certificate of registration, unaccompanied by fraud" does not invalidate copyright); *Ross Products, supra*, 242 F.Supp. at 879 (cases overlooking omissions or misstatements emphasize "that the errors involved were honest, innocent and not intended to be misleading."). *See also Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (doctrine of unclean hands does not bar relief unless defendant can show he has personally been injured by plaintiff's conduct).

The evidence in this case fails to show the scienter element necessary for Lawson to assert his claim successfully. Roberts explained that his omission of Morehead as a co-author was due to Morehead's leaving the doll operation in February 1978 and indicating she wanted nothing further to do with the company. Given that Roberts freely admitted he and Morehead had collaborated on the dolls, and that several newspaper and magazine articles during 1977 indicated that the dolls were the joint product of Roberts and Morehead, we find it impossible to ascribe to this omission an intent to mislead. As to item 6, the pre-existing works, the undisputed evidence showed that Roberts and Allen completed this item initially in some detail, even indicating that the dolls were derived in part from viewing other artists' soft-sculpture work.[8] Although item 6 was left blank in the application that finally was filed with the copyright office, the sole reason for this omission was that after speaking to copyright office personnel, Roberts and Allen thought that the information was unnecessary.[9] Accordingly, we reject Lawson's assertion that OAA's copyright is unenforceable due to fraud on the copyright office.

## B. *Infringement*

■ Lawson also challenges OAA's proof of copying. According to Lawson, his dolls

---

**8.** Appellant complains that even had Roberts and Allen filed an application with this completed item 6 the copyright would have been invalid because they never indicated that their dolls were based specifically on Martha Nelson's. We do not find this omission critical. Roberts has maintained throughout this litigation that his dolls are not derivative works of the Nelson dolls and that he viewed other soft-sculpture work. Roberts, Martha Nelson, and Lawson all testified that the Nelson dolls were not the only soft-sculpture dolls in existence prior to Roberts' beginning his work, and even Lawson testified that he studied dolls "manufactured by other people."

**9.** Item 6 is headed "Compilation or Derivative Work." The instructions for this item indicate that a derivative work results when another work is "recast, transformed or adopted." The record shows that after speaking to copyright office personnel, Roberts and Allen concluded that this item did not apply to their dolls, and no evidence indicated that Roberts purposefully evaded completing this item.

are at least as different from OAA's dolls as OAA's dolls are from Nelson's dolls. Hence if OAA's dolls are "original works" which are copyrightable, then so are his. Lawson also argues that if OAA has a valid copyright at all, it is only for a "derivative work" [10] based on the work of Martha Nelson. As such, only the distinguishable variations from the Nelson dolls are copyrightable, and according to Lawson he has not infringed these variations.

■ These arguments are misdirected. Because it is rarely possible for an author to prove copying directly, courts have developed a two-part test that infringement plaintiffs can use to prove copying indirectly. This test requires the plaintiff to show that (1) the defendant had access to the work and (2) that the defendant's work is substantially similar to the plaintiff's. *Miller v. Universal City Studios*, 650 F.2d 1365, 1375 (5th Cir. 1981); *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 113 (5th Cir. 1978). *Accord Kamar International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062 (9th Cir. 1981); *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980). "Substantial similarity" exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Durham Industries, supra* (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092–93 (2d Cir. 1977).[11] *Accord Kamar International, supra*, 657 F.2d at 1063; *Universal Athletic Sales Co. v. Sal-*

*keld*, 511 F.2d 904, 907 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975). Of course, proof of access and substantial similarity raises only a presumption of copying which may be rebutted by the defendant with evidence of independent creation. *Miller, supra*, 650 F.2d at 1375; *Novelty Textile Mills, supra*, 558 F.2d at 1092 n.2.

■ Here Lawson does not contest that he had access to OAA's dolls. He asserts, however, that his dolls have as much originality as OAA's and he therefore cannot have infringed OAA's copyright. We disagree. This argument confuses the standards of originality and substantial similarity. The fact that differences exist between the copyrighted work and the alleged infringing copy will not:

> carry the day for the defendant unless the differences are sufficient to negate infringement. The tests for eligibility for copyright and avoidance of infringement are not the same. Originality sufficient for copyright protection exists if the "author" has introduced any element of novelty as contrasted with the material previously known to him. Introduction of a similar element by the copier of a copyrighted design will not avoid liability for infringement if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."

---

**10.** 17 U.S.C. § 101 defines "derivative work" as:

> a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, soundrecording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adopted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

A paradigm derivative work is the musical "My Fair Lady," based on the play "Pygmalion."

**11.** As we previously observed, *see* note 4 *supra*, an idea is not copyrightable. The substantial similarity required for infringement, therefore, must be substantial similarity of *expres-*

sion, not substantial similarity of ideas. Consequently, OAA may not copyright the idea of a soft-sculpture doll, nor even the idea of a soft-sculpture "human baby" doll. Rather, its copyright can only extend to the peculiar expression of the idea embodied in its "Little People" dolls. Although the idea-expression dichotomy fails to help Lawson in this case since the trial court found that Lawson had copied most, if not all, of the concrete features of OAA's dolls, we caution trial courts not to be swayed in an infringement action by the fact that two works embody similar or even identical ideas. For an excellent discussion of the dichotomy between similar ideas and similar expression, see *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162–65 (9th Cir. 1977).

*Puddu v. Buonamici Statuary, Inc.*, 450 F.2d 401, 402 (2d Cir. 1971) (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)). *See Durham Industries, supra*, 630 F.2d at 912 n.9; *Universal Athletic Sales, supra*, 511 F.2d at 907. The trial court acting as trier of fact specifically found that Lawson's dolls were substantially similar to OAA's despite certain differences, and we cannot say these findings were clearly erroneous. Moreover, in finding that Lawson had infringed OAA's copyright, the trial court implicitly rejected the notion that the evidence offered by Lawson of independent creation was sufficient to overcome the presumption of copying resulting from OAA's proof of access and substantial similarity. Our review of the record convinces us that this rejection was warranted. The only evidence of independent creation aside from the differences in the dolls was the testimony of Lawson that he did not "copy" OAA's product but rather was "inspired" by OAA's dolls as well as Martha Nelson's. Lawson's insatiable interest in the production techniques of OAA's dolls documented in the record,[12] however, provided ample grounds for the trial court's skeptical treatment of Lawson's testimony.

Lawson also argues that the finding of infringement cannot stand because the OAA dolls are "derivative works" as that term is used in the Copyright Act.[13] Consequently, Lawson argues, OAA can have a valid copyright only in the distinguishable variations of OAA's dolls from Martha Nelson's, which Lawson asserts he has not infringed.

Although both sides in this appeal have expended considerable effort in defining what constitutes a "derivative work" under the copyright laws, we find it unnecessary to decide whether OAA's dolls technically are "derivative works" of the Nelson dolls.

The new copyright law makes clear that a valid copyright can exist in a derivative work. 17 U.S.C. § 102. OAA, moreover, has conceded throughout this litigation that Lawson has every right to produce a soft-sculpture doll as long as that doll is not a copy of OAA's dolls. In holding that Lawson had infringed OAA's copyright, the trial court not only found that Lawson's dolls were substantially similar to OAA's, but also made detailed findings as to the differences among the Nelson, OAA and Lawson dolls. The court detailed eight major differences between the Nelson and OAA dolls, including facial expression, shape of nose, shape of hands, shape of buttocks, construction of eyes, presence of elbows on the OAA dolls, and the signature on the buttocks. In comparing the OAA and Lawson dolls, the court found Lawson's dolls to be larger, with more hair, larger eyes, and rounder head but were "similar [to the OAA dolls] in nearly every other respect." These findings make clear that the Lawson dolls contained most, if not all, of the features of the OAA dolls that the trial court enumerated as differences between the OAA and Nelson dolls. Thus even if we accept the argument that OAA's dolls are derivative works and OAA therefore could have a copyright in only the differences enumerated by the trial court, Lawson's dolls still would have infringed the copyright in these differences. We therefore find no error in the trial court's conclusion that Lawson infringed OAA's copyright.

### III.   Trade Dress Infringement

■ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 states in relevant part:

Any person who shall . . . use in connection with any goods or services, or any container or containers for goods, . . . any false description or representation, including words or other symbols tending

---

**12.** Sharon Payne, an officer of OAA, testified that Lawson always preferred to pick up dolls he had ordered at OAA's factory rather than have them shipped. According to Payne, Lawson visited the OAA facilities as many as nine times during the approximately 16 months he sold OAA dolls. Another OAA employee testified that on one visit Lawson asked to be shown step by step how an OAA doll was made, and inquired about the types of thread and needles used and where to purchase these supplies.

**13.** *See* note 9 *supra.*

falsely to describe or represent the same, ... shall be liable to a civil action by ... any person who believes that he is or is likely to be damaged by the use of any such false description or representation. The former Fifth Circuit has held in decisions which bind us, *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), that § 43(a) provides a federal cause of action for trade dress infringement. *Sun-Fun Products, Inc. v. Suntan Research & Development, Inc.*, 656 F.2d 186, 192 (5th Cir. 1981). *See Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir. 1981).[14] The essential element of an action under § 43(a) is proof by the plaintiff that the alleged infringement by the defendant creates a likelihood of confusion on the part of consumers as to the source of the goods. *Chevron Chemical, supra*, 659 F.2d at 702; *Sun-Fun, supra*, 656 F.2d at 192; *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975).

■ Lawson argues that the trial court erred in granting OAA relief for trade dress infringement under § 43(a) for two reasons. First, Lawson asserts that the adoption procedures and birth certificate marketing techniques are not protectible trade dress. Lawson cites no legal authority for this assertion and fails to explain the reasoning behind it. Nevertheless, we derive from a close reading of appellant's brief and oral argument that the essence of Lawson's position is that "trade dress" refers to the packaging or display of a product rather than a sales technique.

We recognize that the majority of trade dress claims involve a manufacturer's container or packaging for a product. *E.g.,*

*Chevron Chemical, supra* (packaging and containers for lawn care products); *Sun-Fun, supra* (container for sun tan lotion). To the extent packaging is not utilitarian, however, it represents a sales technique designed to make the product readily identifiable to consumers and unique in the marketplace. The same is true of OAA's adoption technique. The adoption procedure truly is part of the "packaging" of OAA's product both in the sense that dolls are never sold without the adoption papers and birth certificate and because the adoption procedure is designed to make OAA's dolls distinctive in the marketplace. The courts, moreover, have recognized that an unfair competition claim can extend to marketing techniques. *E.g., Artus Corp. v. Nordic Co.*, 512 F.Supp. 1184, 1191 (W.D.Pa. 1981) ("likelihood of confusion" test extends to labelling and marketing techniques); *Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp.*, 438 F.Supp. 1061, 1066 (N.D.N.Y.1977) ("[U]nfair competition ... relates to the product as a whole, as it is marketed, and the public's general impression of it."). Consequently, we conclude that the adoption procedures used by OAA in the sale of its dolls qualify as protectible trade dress.

■ Lawson's second argument is that OAA failed to show a likelihood of confusion because it did not prove that Lawson intentionally intended to "palm-off" his dolls as OAA products and because the record shows that he took steps to differentiate the dolls,[15] including directing the employees to distinguish the Lawson dolls from OAA's "if confusion occurred."[16] This argument is not persuasive. As we noted above, the touchstone test for a violation of § 43(a) is the "likelihood of confusion" resulting from the defendant's

---

14. *Chevron Chemical* is a former Fifth Circuit case decided by a Unit A panel after October 1, 1981, and thus technically is not binding on us. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 n.5 (11th Cir. 1981). Nevertheless, because *Chevron Chemical* relies directly on former Fifth Circuit cases which do bind us, and announces no new principles of law, we find it persuasive.

15. Lawson's dolls, for example, had a "Love-Me" heart on their chests which was absent from OAA dolls.

16. We find, as did the trial court, that this statement indicates that Lawson was aware from the beginning of the likelihood that his dolls would be confused with OAA's products.

adoption of a trade dress similar to the plaintiff's. The defendant's intent to tread on the goodwill of the plaintiff, while certainly a relevant factor in establishing a likelihood of confusion, *Chevron Chemical, supra,* 659 F.2d at 703–04, is not the only factor. Instead, our precedents have held that the likelihood of consumer confusion rests on an evaluation of a variety of factors including the defendant's intent, the similarity of design, the similarity of product, the similarity of retail outlets and purchasers, the similarity of advertising media, and actual confusion. *Chevron Chemical, supra,* 659 F.2d at 703. *See Sun-Fun, supra,* 656 F.2d at 189, 192 (factors relevant to unfair competition claim are essentially the same as those for trademark infringement); *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d 500, 504 (5th Cir. 1980) (listing factors in trademark context); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259–63 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980) (listing factors in trademark context).

▮ Here the trial court found that Lawson's trade dress created a likelihood of confusion. According to our prior precedents, this finding is factual and must be upheld unless clearly erroneous. *Dallas Cap & Emblem, supra,* 510 F.2d at 1012. The finding is not clearly erroneous. Both Lawson's and OAA's products are the same, soft-sculpture baby dolls, and are sold in similar retail establishments to a practically identical clientele. OAA, moreover, presented evidence of actual confusion by a potential customer,[17] and this evidence is "patently the best evidence of likelihood of confusion." *Chevron Chemical, supra,* 659 F.2d at 704; *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44, 45–46 (5th Cir. 1975); *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir. 1971). Finally, as to Lawson's intent, we note:

> It is so easy for a business man who wishes to sell his goods upon their merits

to select marks and packaging that cannot possibly be confused with his competitor's that "courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to his successful rival that the public may fail to distinguish between them."

*Chevron Chemical, supra,* 659 F.2d at 704 (quoting *Florence Mfg. Co. v. J. C. Dowd & Co.,* 178 F. 73, 75 (2d Cir. 1910)). We hold, therefore, that the trial court's finding that Lawson had infringed OAA's trade dress and thus had committed unfair competition was not erroneous.

## IV. Attorneys' Fees

▮ Section 505 of the 1976 Copyright Act, 17 U.S.C. § 505, permits the trial court in its discretion to award a reasonable attorneys' fee to the prevailing party in a copyright infringement action. Lawson urges that the $10,000 fee the trial court awarded to OAA was an abuse of discretion because the evidence did not show that Lawson engaged in a particularly willful or bad faith infringement and because the case presented several close legal issues. The statute, however, does not condition an award of fees on the showing of a willful infringement or frivolous suit. While the defendant's good faith and the complexity of the legal issues involved likely would justify *a denial* of fees to a successful plaintiff, *e.g., Boz Scaggs Music v. KND Corp.,* 491 F.Supp. 908, 915 (D.Conn.1980), a showing of bad faith or frivolity is not a requirement of *a grant* of fees. Rather, the only preconditions to an award of fees is that the party receiving the fee be the "prevailing party" and that the fee be reasonable. *See Twentieth Century Music Corp. v. Frith,* 645 F.2d 6, 7 (5th Cir. 1981); *Russell v. Price,* 612 F.2d 1123, 1132 (9th Cir. 1979), *cert. denied,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980). Here OAA was the prevailing party and appellant has not challenged the reasonableness of the fee. We find no abuse of discretion.

AFFIRMED.

---

**17.** This evidence consisted of the testimony of a witness who had purchased a Lawson doll in Tennessee thinking that it was an OAA doll.