ORIGINAL APPALACHIAN ART-
WORKS, INC., a Georgia
corporation, Plaintiff,

v.

The McCALL PATTERN COMPANY, a
Delaware corporation, Defendant,

v.

ORIGINAL APPALACHIAN ART-
WORKS, INC., a Georgia corporation,
Counterclaim Defendant.

Civ. A. No. C84–1091A.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 24, 1986.

On Motion for Attorney Fees
June 6, 1986.

William H. Needle, Birch, Hartness &
Link, Atlanta, Ga., for plaintiff.

John R. Hunt, Kilpatrick & Cody, Atlan-
ta, Ga., for defendant.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled action is one for copyright infringement and unfair competition, brought pursuant to the Federal Copyright Act, 17 U.S.C. § 101 *et seq.*, the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, and state laws governing unfair competition. Plaintiff seeks injunctive relief and monetary damages. The jurisdiction of this court is based upon 15 U.S.C. § 1121, 17 U.S.C. § 502, and 28 U.S.C. §§ 1331 and 1338.

The matter came for trial before the court without a jury on February 25 and 26, 1986. The action was bifurcated. The only issue tried was that of defendant's liability with respect to plaintiff's claims of copyright infringement and unfair competition. This order constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1.

Plaintiff Original Appalachian Artworks, Inc. ("OAA") was incorporated in 1978. On June 1, 1979, copyright registration number 85–804 was issued for plaintiff's dolls, "The Little People", which are soft-sculpture dolls produced by Xavier Roberts. These dolls were first published, as defined by the Copyright Act, in February, 1978. Roberts subsequently assigned all his interests in the copyright to OAA. OAA's dolls, now called "The Cabbage Patch Kids", are soft-sculpture dolls, sold with birth certificates and adoption certificates as part of the marketing strategy. The Cabbage Patch Kids' marketing scheme was developed by Xavier Roberts.

2.

Defendant McCall Pattern Company ("McCall") is a corporation which sells, *inter alia,* patterns which can be used to create soft-sculpture dolls. On August 30, 1982, McCall entered into an agreement with Faye Wine, a doll collector and designer, whereby Ms. Wine granted to McCall the right to manufacture and sell patterns of soft-sculpture dolls, designed by Ms. Wine.

3.

Ms. Wine began making and collecting dolls in 1976. Wine made her first doll in 1976, a soft-sculpture doll modeled upon the soft-sculpture dolls of artist Bernard Ravca. Wine used a variety of instructional materials in the development of her dolls, including numerous books and magazines on dollmaking.

4.

The principal anatomical features of Wine's early dolls included a round, oversized head, large and widely spaced eyes, and use of two types of mouths, a straight single-stitched mouth, and a semi-circular embroidered mouth. The early Wine dolls contained either a round button nose or a long nose with distinctive nostrils.

5.

In September, 1977, Wine opened, in her home, "The Hen's Nest Orphanage" doll shop, wherein she sold her "Little People" dolls, complete with adoption papers and birth certificates for the dolls' owners.

6.

"Little People" is a name widely used for soft-sculpture dolls. Ms. Wine gave adoption certificates following a suggestion in a book on dollmaking and doll repair.

7.

In 1979 and 1980, Wine developed further her dolls. Following suggestions from colleagues at the International Doll Makers Show, Ms. Wine changed the noses of her dolls, whereby the nose became a small, pug nose placed high on the doll's face, between the eyes. Ms. Wine changed also her marketing strategy. She changed her dolls' names to "Blossom Babies" and delivered "health certificates" to new owners rather than birth certificates. The orphanage was renamed the Garden Center. In September, 1981, Wine's dolls were substantially developed and she displayed her Blossom Babies at the Atlanta Gift Show.

**8.**

From January to August, 1982, Wine created patterns for the various Blossom Babies dolls. Wine copyrighted, in 1982, only those dolls which became the subjects of patterns or instruction books which she developed. These copyrighted patterns were all available at the August, 1982, Atlanta Hobby and Craft Show.

**9.**

At the August, 1982 craft show, Robert Hermann, Senior Vice-President of McCall, approached Ms. Wine regarding the creation of an "E.T." doll design. Ms. Wine developed, on a rush basis, an E.T. doll, but McCall was unable to secure a license for the doll. Subsequently, McCall decided to try one of the Blossom Babies as a McCall pattern. The first Faye Wine pattern for McCall was shown in the McCall's catalogue in mid–1983. The pattern was No. 8659, and was for a 23–inch soft-sculpture Blossom Babies doll.

**10.**

McCall's Hermann had visited briefly plaintiff's "Babyland General Hospital" in the fall of 1981. Hermann met with two women executives of OAA who informed him that OAA was not interested in licensing a pattern company for The Cabbage Patch Kids.

**11.**

The pattern in issue herein, McCall pattern No. 9074, is a similar pattern to that originally given by Wine to McCall. No. 9074 was developed as a smaller, eighteen-inch follow-up to pattern No. 8659.

**12.**

Ms. Wine first encountered Roberts' work in October, 1977, at the gift shop in Unicoi Lodge, in the mountains of North Georgia. Ms. Wine bought an uncopyrighted soft-sculpture doll for her collection and received, several months later, an adoption certificate. Ms. Wine had no further contact with Roberts or any of his dolls until August, 1981, when she saw, for the first time, Roberts' copyrighted dolls at the gift show in Atlanta. Both Wine and Roberts displayed their dolls at the 1981 gift show, as well as at the January, 1982 craft show.

**13.**

Plaintiff contends that Wine had access to its copyrighted dolls prior to the 1981 gift show by fact of: 1) the extent of public distribution of plaintiff's dolls, and 2) Wine's visits to the North Georgia mountains.

**14.**

Plaintiff has not shown that Ms. Wine had actual access to plaintiff's copyrighted dolls, by mere fact of public dissemination. It was not until August, 1982, that plaintiff granted a license to Coleco Industries, Inc. to mass market the dolls. OAA sold, in 1981, 71,127 dolls. In 1982, OAA sold 39,-895 dolls. However, in 1983, Coleco, as licensee, sold 2,840,000 dolls. Plaintiff has not submitted any further evidence of dissemination.

**15.**

Additionally, plaintiff has not shown that Ms. Wine obtained access to copyrighted dolls during her visits to the North Georgia mountains. The doll Wine bought in 1977 was a pre-copyrighted, developmental work.

**16.**

Wine's first doll pattern for McCall, No. 8659, was fully developed by Ms. Wine by 1980. The dolls in McCall pattern Nos. 8659 and 9074 are substantially similar except No. 9074 is patterned for an eighteen-inch doll and suggests a single-stitched mouth rather than a semi-circular mouth used in No. 8659.

**17.**

No. 9074 is not substantially similar to OAA's dolls. The only similarities between the dolls are that they are needle-sculpture dolls, made of similar material, which depict children.

**18.**

The differences between the dolls are many, both with respect to the overall impression and the individual features. The McCall/Wine doll has a cartoonish appearance, with an over-scaled head, no angles in the broad, flat face, and eyes that are over-sized and abnormally far apart. The

nose of the McCall/Wine doll is a round, button nose. In contrast, the OAA/Roberts doll is more realistic in appearance, with a proportionate head size, lines and angles in the face formed by a distinctive Roman nose, and eyes within the normal range of distance from each other.

19.

These differences in the size of the head, face, eyes, and nose, are alone sufficiently disparate.

20.

However, there are other significant dissimilarities. The torso of the McCall/Wine doll has approximately the same mass as the head, and is well-rounded with an inner belly button. The torso of the OAA/Roberts doll is normal-sized and rectangular in shape, with wide, rectangular shoulders and an outer belly button. The McCall/Wine doll has extreme needle sculpting on the inner elbow, whereas the OAA/Roberts doll has none. The backs of the knees and the ankles on the OAA/Roberts has extreme needle sculpting, whereas these parts on the McCall/Wine doll are formed by single threads. In addition to these distinct and dissimilar individual features, the McCall/Wine doll, viewed as a whole, has little similarity to the OAA/Roberts doll.

21.

Plaintiff contends that the defendant's publication of its pattern package covers and catalogues depict dolls that are substantially similar to plaintiff's dolls. The package covers and catalogues display dolls that are fully clothed. However, the faces of the dolls are shown in full. The large head and eyes of the McCall/Wine doll are easily distinguished, as are the nose and profile.

22.

The court finds that the depictions of the dolls on the pattern package covers and in the catalogues are not substantially similar to plaintiff's dolls.

23.

The McCall doll pattern was independently created by Faye Wine, and was not copied from plaintiff's copyrighted dolls.

24.

McCall sells its patterns for soft-sculpture dolls and clothes for dolls through large catalogues which are published ten times per year. As part of its gift and craft sales, McCall sells patterns for doll clothing. The pages upon which doll clothing for the Blossom Babies is sold states that the clothes fit soft-sculpture dolls "such as Cabbage Patch and Blossom Babies." There is an express disclaimer upon each page which mentions Cabbage Patch, that states, in part: "these soft sculptured doll wardrobe patterns are not sponsored by Original Appalachian Artworks, Inc."

25.

Plaintiff has not shown that any consumers were confused as to the source or affiliation of the products displayed in the catalogue.

## CONCLUSIONS OF LAW

1.

In order to prevail on its copyright infringement claim, plaintiff must prove ownership of a copyright and copying by the alleged infringer. OAA's ownership of a valid copyright is not contested.

2.

Plaintiff has the burden of proving that defendant, in fact, copied the protected material.

3.

In the absence of direct evidence of copying, a *prima facie* case of copying may be established by showing access and substantial similarity.

4.

In order to prove access, plaintiff must show a reasonable possibility of access.

5.

■ Plaintiff has not established access.

6.

■ Access also may be proven by showing a similarity which is so striking that the possibility of independent creation, coin-

cidence and prior common source are, as a practical matter, precluded. Plaintiff has not shown that the dolls are strikingly similar.

7.

The second element of plaintiff's *prima facie* case of copyright infringement is substantial similarity.

8.

To prove substantial similarity, plaintiff must prove that the defendant copied from the plaintiff's work and that the copying constituted misappropriation.

9.

With respect to the first issue, copying by the defendant, the similarity of the work may be proved by analytic dissection and expert testimony.

10.

Once copying has been proven, the issue of whether misappropriation has occurred is to be resolved by the ordinary observer test.

11.

The expert evidence established that, after analytic dissection, defendant's dolls are significantly dissimilar to plaintiff's copyrighted dolls.

12.

Plaintiffs also failed to establish that the dolls' overall appearances are similar, when viewed by the lay observer.

13.

■ Furthermore, independent creation is a complete defense to plaintiff's claim of copyright infringement.

14.

McCall's evidence establishes that its dolls were independently created by Faye Wine.

15.

The court finds therefore, that plaintiff has failed to establish infringement of its copyright.

16.

■ Unfair competition, under 15 U.S.C. § 1125(a) is a question of whether the de-

fendant is passing off his goods or services as those of the plaintiff by virtue of a substantial similarity between the two, leading to confusion on the part of potential customers.

17.

The plaintiff must prove that there is a likelihood of confusion as to the source of the goods.

18.

The plaintiff did not submit any evidence which establishes that McCall customers, upon looking at the pattern package covers and catalogues, were confused as to the source or affiliation of the goods offered.

19.

The court finds that the plaintiff has failed to establish unfair competition in the use of defendant's catalogues.

## ORDER AND JUDGMENT

It is hereby ordered that judgment be rendered for the defendant.

## ON MOTION FOR ATTORNEY FEES

■ The above-styled matter is presently before the court on defendant McCall Pattern Company's motion for attorney's fees.

This court, by order dated April 24, 1986, granted judgment for the defendant, McCall Pattern Company ("McCall"), finding that plaintiff failed to establish its claims of copyright infringement and unfair competition. Defendant McCall moves for an award of attorney's fees.

The Copyright Act, 17 U.S.C. § 505, permits an award of reasonable attorney's fees to the prevailing party in a copyright action. In the Eleventh Circuit, the only prerequisites to an award of fees is that the "party receiving the fee be the 'prevailing party' and that the fee be reasonable." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 832 (11th Cir.1982); *See Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 154 (3d Cir.1986).

The court notes that the defendant clearly prevailed in this action. This court found that plaintiff failed to show access and substantial similarity. The court held

that the defendant's doll pattern was the result of independent creation. Furthermore, this court found that the differences between the dolls were many, both with respect to the overall look and the individual features.

Under these circumstances, the court finds that the defendant McCall is entitled to an award of attorney's fees. However, McCall has failed to submit to the court the appropriate affidavits and itemizations for an award of attorney's fees. Hence, the parties are directed to attempt a settlement of this matter, whereby McCall receives from plaintiff a reasonable attorney's fee. In the event the parties are unable to reach a satisfactory and reasonable award, McCall is directed to submit to the court affidavits and detailed time itemization sheets in support of its claim to a fee.

In summary, McCall's motion for attorney's fees is granted. The parties are directed to attempt to settle upon an amount, but, in the event they are unable to do so, McCall is directed to submit the appropriate affidavits and itemization sheets to the court.