**CORNERSTONE HOME BUILDERS, INC., Plaintiff,**

v.

**Hugh J. MCALLISTER, III, Defendant.**

**No. 8:01-CV-2028TMAP.**

United States District Court, M.D. Florida. Tampa Division.

Jan. 27, 2004.

**1318**

Arthur W. Fisher, III, Arthur W. Fisher, III, P.A., Tampa, FL, for Cornerstone Home Builders, Inc., a Florida corporation, plaintiff.

Michael Alan Linsky, Linsky & Reiber, Tampa, FL, for Hugh J. McAllister, III.

Hugh J. McAllister, III, Santa Clara, CA, Pro se.

Frank R. Jakes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Imagination Custom Homes, Inc., a Florida corporation, Ramona L. Morejon, an individual, defendants.

### ORDER

PIZZO, United States Magistrate Judge.

Cornerstone Home Builders, Inc. ("Cornerstone") builds custom homes in Apollo Beach, Florida, a community that borders the southeastern shores of Tampa Bay. When its president, Stephen Bronstein, spotted a new house in the neighborhood which remarkably resembled its St. Croix design, Cornerstone sued the owner, Hugh J. McAllister, III, for copyright infringement. Although McAllister denies this, after a non-jury trial, I find he willfully infringed Cornerstone's copyright (VA 1–1016–930). Accordingly, Cornerstone is awarded $34,368 in damages.[1]

#### A. Findings of Fact

In 1998, Bronstein designed the St. Croix, a two-story home featuring contemporary Spanish-style architecture, and through Cornerstone built four in Apollo Beach from September 1998 to December 2000. Cornerstone, which copyrighted the design in June 2000, not only maintained its technical and two-line drawings at these construction sites, it also offered prospective home-buyers two-line drawings at its

---

1. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) (doc. 52).

model center, the guard gate of Symphony Isles (an Apollo Beach subdivision), at three or more Apollo Beach real estate offices, and on an internet website maintained by Cornerstone. Sometime in late 2000 while driving around the area Bronstein's wife noticed a new house under construction—one that remarkably resembled the St. Croix inside and out. It was McAllister's "dream home."

McAllister, a college professor who resides in California, already owned a home in Apollo Beach. Deciding he eventually wanted to retire here, he looked for a vacant lot to build his "dream house." After exploring the area, and particularly noting the new homes for architectural inspiration, he settled on 716 Bunker View Drive, a vacant lot near his old place and coincidentally only a few streets away from a St. Croix model.[2]

In the summer of 2000, McAllister mailed a sketch of a two-story home with arched windows to Ramona Morejon, a builder who had done some work for him.[3] He says several sources inspired his workproduct: the Spanish architecture and design features of a specific structure at Santa Clara University; suggestions by his brother (a kitchen and bathroom contractor) and his brother's subcontractor; previous homes he owned; and design sketches found on the internet.[4] From all this, McAllister requested Morejon customize his sketch to fit his particular needs and budget, namely: eliminate the lanai bathroom, shrink the living space to approximately 2,600 square feet, change the three-car garage to a two-car garage, shorten the rear master-bedroom wall to be even with the rear living-room wall, eliminate the front and rear upstairs balconies, and add a second bathroom upstairs. Morejon forwarded McAllister's design and ideas to an architect, Pete Alfonso, who modified the plan by moving the garage to the left to expose the far left panel of the dining room's bay window, moving the door from the garage into the utility room to the left, eliminating the pantry, moving the right wall of the family room to the left and even with the staircase wall, adding a bay window on the left family room wall, angling the wall separating the family and living rooms, and squaring off the front left corner in the master bathroom. The architect also reconfigured the master bathroom, changed the closet in bedroom two from a walk in to a smaller closet, and extended the hallway to the rear wall of the home to accommodate the addition of the second upstairs bathroom. Despite these changes, however, Cornerstone maintains McAllister's home retains the "look and feel" of the St. Croix and infringes the firm's copyrighted design.

### B. Conclusions of law

■ A plaintiff makes out a *prima facie* case of copyright infringement if he can show by a preponderance of the evidence ownership of a valid copyright in the work in question and unauthorized copying by the defendant. *Donald Frederick Ev-*

2. Apollo Beach is approximately a thirty-minute drive east then south from Tampa's downtown on U.S. Highway 41 and is comprised of older, moderately-priced homes and newer, high-end residences (such as those in Symphony Isles like the St. Croix). A relatively confined geographical area, it is isolated from other residential neighborhoods by the surrounding land use (industrial sites border its north and farms and farming-related industries border its south and much of its west).

3. Morejon's company, Imagination, is a small operation that had not built any homes before McAllister's. Originally parties to this action, the Plaintiff settled its claims with them prior to trial. *See* doc. 39, Order of Dismissal.

4. McAllister claims his brother and his brother's subcontractor developed the sketch he gave to Morejon. Notably, McAllister's brother did not testify and support this account.

*ans & Assoc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir.1986). While all house plans obviously share common features, some designs give particular homes a certain "look and feel." *See Howard v. Sterchi,* 974 F.2d 1272, 1275 (11th Cir.1992); *LaJoie v. Pavcon, Inc.,* 146 F.Supp.2d 1240, 1247 (M.D.Fla.2000). This distinguishing "look and feel," like the one offered by St. Croix's design, is subject to protection. *Arthur Rutenberg Homes, Inc. v. Maloney,* 891 F.Supp. 1560, 1566 (M.D.Fla.1995).[5]

■■■ Because proof of direct copying is rare, the Eleventh Circuit offers a plaintiff a two-part method to prove copying: show the defendant had access to the plaintiff's work and that the plaintiff's and defendant's products are substantially similar. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982).[6] If the plaintiff demonstrates access and similarity, a presumption of copying is raised; however, the defendant can rebut the inference with evidence of independent creation. *Original Appalachian Artworks,* 684 F.2d at 829. Infringement may be found even when the defendant does not actually draw the infringing plans himself. *Arthur Rutenberg Corp. v. Dawney,* 647 F.Supp. 1214, 1216 (M.D.Fla.1986).

■■■ McAllister denies he copied Cornerstone's plans, knew about the St. Croix, or even noticed any of Cornerstone's models while exploring Apollo Beach for a vacant lot and canvassing the new homes for inspiration. Not only does he refute access to Cornerstone's design, he asserts he created his own work. So, any likeness between the two plans falls to random coincidence. But this chance—two houses uncannily similar inside and out within blocks of each other—defies reason and commonsense. And Cornerstone's proof underscores the improbability of McAllister's happenstance defense.

Although McAllister denies he knew about Cornerstone's work, with his access to its plans and the likeness of his design to the St. Croix's, I find his account incredible. Anyone interested in building in Apollo Beach logically would first inspect the subdivision's models and existing homes. This makes even more sense since Apollo Beach is isolated from other communities, particularly other waterfront-style subdivisions. To see other developments, McAllister needed to travel a considerable distance; thus, convenience dictated he look closely at Apollo Beach's models. Indeed, it would be unimaginable for anyone interested in building a "dream home" to ignore the houses and models in the area. Any potential buyer, especially a serious one, would want insight about local construction styles, quality, and costs.[7] For these reasons, builders, like Cornerstone, saturate an area with its plans. McAllister had ample chances to see its work. And the similarity between the two homes strongly suggests he copied St.

---

**5.** I note McAllister does not dispute the validity of Cornerstone's copyright in the St. Croix.

**6.** "Access" merely means "an opportunity to view the protected material." *Maloney,* 891 F.Supp. at 1566 (citing *Robert R. Jones Assoc. v. Nino Homes,* 858 F.2d 274, 277 (6th Cir. 1988)). "Substantial similarity" exists where "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Original Appalachian Artworks,* 684 F.2d at 829. An average lay observer is one who, without any vested interest in the governing issue, is sufficiently informed and alert to identify precisely the differences in the competing designs yet sufficiently informed and independent to fairly identify and assess the similarities. *Maloney,* 891 F.Supp. at 1567.

**7.** Because the building code requirements for waterfront and flood-prone areas are demanding, reviewing the current construction in the subdivision only makes more sense.

Croix's design: an exterior elevation that mirrors St. Croix's (particularly St. Croix's unique two-story bay-window tower) with minor exceptions to roof line and window sizes; a floor plan that accepts the St. Croix's adjacencies and nearly exact dimensions absent some areas McAllister had removed to save costs and reduce the size of his structure; a curved staircase (initially in McAllister's plans but removed later for costs) that matches St. Croix's not only in style but in its exact location; and a second story layout that mimics the St. Croix. McAllister's instructions to his builder about what to change from his sketch further confirm his use of Cornerstone's plan: remove the lanai bathroom, reduce the three-door garage to a two-door space, shorten the master-bedroom wall to be even with the rear living-room wall, and eliminate the front and rear upstairs balconies.

■ Cornerstone need not prove exact reproduction. *Maloney, supra,* at 1567 ("exact reproduction or near identity is not necessary to establish infringement"). The presence of substantial similarities rather than the differences dictates whether infringement exists. Here, the homes have the same "look and feel"; something McAllister could never have achieved by happenstance. I find Cornerstone made a *prima facie* case and McAllister did not rebut the consequent presumption that he copied Cornerstone's copyrighted plan. Thus, Cornerstone proved McAllister infringed its protected design by a preponderance of the evidence.

*C. Damages*

■ Cornerstone seeks actual damages under 17 U.S.C. § 504(b). The proper measure of actual damages for infringement of copyrighted architectural drawings owned by a builder and infringed by a competing builder is the lost prof-

its suffered by the plaintiff from the home constructed pursuant to the infringing plans. *Maloney,* 891 F.Supp. at 1568 (citing *Robert R. Jones Assoc. v. Nino Homes,* 858 F.2d 274, 277 (6th Cir.1988) and *Intown Enterprises, Inc. v. Barnes,* 721 F.Supp. 1263, 1267 (N.D.Ga.1989)). Cornerstone realized an average profit of 19.2% in building its St. Croix homes. Hence, Cornerstone contends that had it constructed the McAllister residence, it would have realized a 19.2% profit on the final price. McAllister's construction cost $179,000. Applying the formula, Cornerstone's damages total $34,368.[8]

*D. Conclusion*

For the reasons stated, the Clerk of Court is directed to enter judgment for Plaintiff Cornerstone and against Defendant McAllister in the amount of $34,368.