[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 27, 2005
THOMAS K. KAHN
CLERK

No. 04-11259

D. C. Docket Nos. 02-14102 CV-DMM
02-14283 CV-DMM

MAVERICK BOAT COMPANY, INC.,

Plaintiff-Counter-Defendant-
Appellant-Cross-Appellee,

versus

AMERICAN MARINE HOLDINGS, INC.,
a.k.a. (A Delaware Corp.),

Defendant-Counter-Claimant-
Appellee-Cross-Appellant,

BLAZER BOATS, INC.,

Defendant-Appellee-Cross-
Appellant

_____

BLAZER BOATS, INC.,

versus

Plaintiff-Appellee-Cross-
Appellant,

MAVERICK BOAT COMPANY, INC.,

                                Defendant-Appellant-Cross-
                                Appellee,

AMERICAN MARINE HOLDINGS, INC.,

                                Defendant-Appellee-Cross-
                                Appellant.

---

Appeals from the United States District Court
for the Southern District of Florida

---

**(July 27, 2005)**

Before DUBINA and FAY, Circuit Judges, and GOLDBERG*, Judge.

DUBINA, Circuit Judge:

After a bench trial, the district court entered an order and final judgment in this action against Maverick Boat Company, Inc. ("Maverick"), wherein the district court cancelled Maverick's vessel hull design registration in the United States Copyright Office, denied Maverick's claims against American Marine Holdings, Inc. ("AMH") and Blazer Boats, Inc. ("Blazer") for copyright infringement and trade dress infringement, and awarded AMH and Blazer attorneys' fees. Maverick now appeals the cancellation of its copyright

_____

*Honorable Richard W. Goldberg, Judge, United States Court of International Trade,

2

sitting by designation.

registration, the judgment regarding its copyright infringement claim, and the award of attorneys' fees.

AMH and Blazer cross-appeal the district court's orders and final judgment, wherein the district court denied their individual claims against Maverick for false advertising, unfair competition, tortious interference with advantageous business relationships, product disparagement, and defamation. AMH also cross-appeals the district court's denial of its unfair trade practices claim. For the reasons that follow, we affirm the district court in all respects.

## I.  BACKGROUND

Maverick, AMH, and Blazer are manufacturers of recreational boats, and each company manufactures a boat known as the "bay boat." Maverick introduced its Pathfinder 2200 V-Hull bay boat ("Pathfinder 2200 V-Hull") at its July 1998 dealer meeting, and it sold more than 30 of these boats that same year. Following this initial sale, however, Maverick became aware of problems with the boat's tooling. Specifically, Maverick became aware of customer complaints about the "sheer line" (the intersection of the hull sides with the top of the boat's deck) on the boat. Paul Ellig, who was primarily responsible for correcting the sheer line, testified at trial that the irregularities in the boat's lines were not intended to be

3

present in the original boat and, thus, were the result of mistakes.

Because the sheer line was off, other boat lines, including the "style line" (the offset made on the hull sides to establish a unique graphic form or signature of the model or brand name) and the "chine line" (the line formed by the intersection of the hull lines with the bottom of the boat), were also off. Ellig testified that once an element of a boat is changed because of an irregularity, other aspects of the boat are also affected. Maverick corrected these lines in a "revised design." However, at trial, Maverick did not introduce any records to show the changes that it made to any of the boat's lines: Maverick did not introduce any internal memoranda, drawings, correspondence, or documents of any kind that refer to the "revised design."

For a period of time after the original model had been retooled, both the "original design" and the "revised design" were in production. On or about May 4, 1999, Maverick began shipping boats with the revised design. The name and model number of the boat remained the same, and Maverick's advertisements never mentioned the design change. Also, during the time that Maverick sold both the "original design" and the "revised design," it never informed its dealers or the public which design they were obtaining.

Sometime in 2000, Maverick's president, D. Scott Deal, directed Jim Leffew, Maverick's Vice President of Manufacturing, to register all of the

4

Maverick boats that were applicable under the Vessel Hull Design Protection Act ("VHDPA"), 17 U.S.C. § 1301 *et seq.* Leffew selected the Pathfinder 2200 V-Hull for the first registration. However, Deal did not provide Leffew with any specific instructions regarding the completion of the registration for this boat.

On February 27, 2001, Maverick submitted the application for Registration Number DVH 0049 ("DVH 0049") to the United States Copyright Office. The application identifies the make and model of the vessel as a "Pathfinder 2200 Bay Boat (V-Hull design)." The date of registration/publication for DVH 0049 is March 5, 2001. Maverick admitted in its pleadings that pursuant to 17 U.S.C. § 1302(5), DVH 0049 is invalid because it was for the "original design," which was made public more than two years prior to the date of its application.

On April 10, 2001, Maverick submitted a second application, completed by Leffew, for the Pathfinder 2200 V-Hull, Registration Number DVH 0056 ("DVH 0056"), to the United States Copyright Office. The application and registration identify the make and model of the vessel, and the type and style of the design, as the "Pathfinder 2200 Bay Boat (V-Hull Design)." The type and style of the design is further identified as "fiberglass single V hull and deck," and the registration states that the design is a "[n]ew improved version of earlier design. Revised original hull (forward) shape, style line location." Leffew photographed a Pathfinder 2200 V-Hull and submitted the photographs with the application for

5

DVH 0056.  But, Leffew did not know the model year of the boat depicted in the photographs that he submitted.  In fact, when Leffew photographed the boats for each application, he did not know whether he was photographing a boat with an original or revised design.

AMH began its efforts to develop its Pro-Line 22 bay boat in or around October or November 2000 by researching bay boats and assessing whether or not to manufacture its own.  In April 2001, AMH began building its Pro-Line 22.

During the summer of 2001, Maverick learned that AMH was marketing a boat with a vessel hull that appeared to have been copied from a Pathfinder 2200 V-Hull.  Maverick asked Lee Dana, an architect and small craft designer, to analyze the respective hull designs and make a determination as to their similarities.  On December 3, 2001, Dana sent a letter to Maverick stating, in part, that "it is very probable that the mold for the 22 Pro-Line was 'back cast' from a 22 Pathfinder Hull."  AMH learned of Maverick's application for copyright registration of the Pathfinder 2200 V-Hull in August 2001 when Maverick sent it a cease-and-desist letter.  In January 2002, Maverick sent letters to dealers selling the Pro-Line 22 stating that it had evidence that AMH had copied Maverick's design and that sales of the AMH boats could expose the dealers to liability under the VHDPA.

Also in January 2002, Maverick learned that Blazer was marketing a boat

6

with a vessel hull that appeared to have been copied from the Pathfinder 2200 V-Hull. Maverick asked Donald Patterson, a certified marine surveyor and inspector, to analyze the respective hull designs and make a determination as to their similarities. Patterson sent a letter to Maverick stating, in part, that "it is very probable that one hull design was copied/'splashed' to produce the other." In May 2003, Maverick sent letters to dealers selling Blazer's Blazer 2220 bay boats stating that it had evidence that Blazer had copied Maverick's design and that sales of the Blazer boats could expose the dealers to liability under the VHDPA.

## II. ISSUES

1. Whether the district court erred in cancelling Maverick's vessel hull design DVH 0056.

2. Whether the district court erred in holding that AMH and Blazer did not infringe Maverick's vessel hull design.

3. Whether the district court erred in awarding attorneys' fees to AMH and Blazer.

4. Whether the district court erred by ruling in favor of Maverick on the claims that AMH and Blazer cross-appealed.

## III. STANDARDS OF REVIEW

We review the district court's factual findings under the clearly erroneous standard. Fed. R. Civ. P. 52(a).

We review the district court's findings as to the similarity of the disputed works for "clear error." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 825 n.4 (11th Cir. 1982); *see also Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986).

We review the district court's decision to award attorneys' fees for abuse of discretion. *See* 17 U.S.C. § 1323(d) (providing that a court "may award reasonable attorney's fees to the prevailing party"); *see also MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842 (11th Cir. 1999) (addressing the Copyright Act's attorney's fees provision, 17 U.S.C. § 505).

Finally, we review de novo the district court's conclusions of law as to the claims that AMH and Blazer cross-appealed. *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996).

## IV. <u>ANALYSIS</u>

A. <u>Cancelation of DVH 0056</u>

In response to the Supreme Court's decision in *Bonita Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S. Ct. 971 (1989), Congress passed the VHDPA to provide copyright protection to the owners of certain vessel hull designs. Specifically, the VHDPA provides copyright protection to the owner of an original vessel hull design, 17 U.S.C. § 1301(a)(1); and, it also provides copyright protection to the owner of a vessel hull design that is "a *substantial*

8

revision, adaptation, or rearrangement" of a design that is otherwise excluded from protection under 17 U.S.C. § 1302. 17 U.S.C. § 1303 (emphasis added).

Maverick attempted to obtain protection for its "original" Pathfinder 2200 V-Hull design by submitting an application for registration under the VHDPA in February 2001. This application resulted in DVH 0049, which, as previously noted, is invalid under 17 U.S.C. § 1302(5). Maverick then submitted an application for the registration of its "revised" Pathfinder 2200 V-Hull design. This application resulted in DVH 0056 and is at issue in this litigation.

Maverick argued in the district court (as it does here) that its revised design is a substantial revision of the original design and, thus, that it is entitled to protection pursuant to 17 U.S.C. § 1303. The district court disagreed and specifically found that the design Maverick registered in DVH 0056 was not a "substantial revision, adaptation, or rearrangement" of the original Pathfinder 2200 V-Hull design as required by 17 U.S.C. § 1303.

The starting point in statutory construction is the language of the statute, and if that is plain, then the sole function of the court is to enforce the statute according to its terms. *Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993). The plain language of 17 U.S.C. § 1303, upon which the district court relied, provides that only a "substantial" change to a design may be protected. In order to determine whether Maverick's revision was substantial, the district court

9

considered the following factors: (1) the nature of the changes made to the "original" Pathfinder 2200 V-Hull design; (2) the similarities between the "original" design and the "revised" design; and (3) the lack of evidence of the revision process, including, for example, the lack of evidence to support the veracity of the publication date on DVH 0056.

After considering these factors, and the evidence, the district court correctly determined that the changes made to the original design were merely corrections to a mistake, and not substantial. AMH and Blazer's expert witness, Augusto Villalon, testified that the changes made to the original design were minimal (such as straightening the sheer line) and that they did not affect the design of the boat. Maverick did not proffer any expert testimony as to the differences between the two boats. In fact, Maverick did not attempt to secure an original design to compare it with a revised design, and it did not point to any specific differences between the two boats–either apparent to the naked eye or based on specific measurements–that would demonstrate the extent of the differences in the two designs. Moreover, Maverick failed to introduce any records to reflect the actual changes between the original design and the alleged revised design; there was no change made to the name of the boat or the model number of the boat; the two boats were held out to the public as the same boat; nothing in Maverick's advertising indicated that there was an original and a revised design; and Maverick

sold both versions simultaneously without any representation that one was an original design and the other a revised design.

After reviewing the record, reading the parties' briefs, and having the benefit of oral argument, we conclude that the district court was correct in finding that the changes made by Maverick to the original Pathfinder 2200 V-Hull design were merely corrections to a mistake. In fact, the correction of an unintended problem does not create a new design, but merely makes the original design what it was always intended to be. Because Maverick simply corrected mistakes in its original design, did not inform the public that its corrected version was in fact a revised or improved version, and presented no evidence as to the extent or nature of its corrections, we cannot conclude that its purported revised design constitutes the "substantial" revision that Congress plainly intended to be protected by 17 U.S.C. § 1303. Accordingly, we agree with the district court's finding that Maverick is not entitled to the protection offered by the VHDPA for DVH 0056.

B. <u>AMH and Blazer's Infringement</u>

Because we agree with the district court that Maverick's Pathfinder 2200 V-Hull design is not protected under the VHDPA, we need not address Maverick's infringement claim. *See* 17 U.S.C. § 1309(a). The district court, however, addressed it for the sake of argument; so, we will discuss it briefly.

Pursuant to 17 U.S.C. § 1309(e), "[a] design shall not be deemed to have

11

been copied from a protected design if it is original and not substantially similar in appearance to a protected design." Here, the record demonstrates that AMH and Blazer's boats are "original and not substantially similar in appearance" to Maverick's Pathfinder 2200 V-Hull design.

At trial, the district court heard and credited/discredited witness testimony on this issue and viewed and considered photographs and other evidence of the boats' designs. After reviewing the record, we cannot say that those findings are clearly erroneous. In fact, the evidence at trial clearly showed that the differences between the hulls of AMH's Pro-Line 22 and Maverick's Pathfinder 2200 V-Hull were substantially greater than the minimal differences between the designs in Maverick's invalid DVH 0049 and DVH 0056. Thus, at a minimum, Maverick cannot credibly claim that DVH 0056 is valid over the admittedly invalid DVH 0049, while at the same time claiming that AMH's accused boat (which is substantially different) is an infringement of DVH 0056.

C. Attorneys' Fees

We conclude from the record that the district court did not abuse its discretion in awarding attorneys' fees to AMH and Blazer under the VHDPA. The VHDPA expressly authorizes the court to award attorney's fees, in its discretion, to the prevailing party. 17 U.S.C. § 1323(d). Here, the district court appropriately awarded fees based upon Maverick's "careless conduct surrounding registration

12

DVH 0056," Maverick's "decision to turn a blind eye to reasonable doubt surrounding the validity of DVH 0056," and "the impact of Maverick's conduct on AMH and Blazer's businesses." In addition, AMH and Blazer obviously incurred their own substantial legal expenses as a result of defending Maverick's claims.

D. Cross-Appeal

We affirm, without discussion, the district court's disposition of the issues presented on the cross-appeals based on the reasoning contained in its memorandum opinions filed on August 21, 2003, August 22, 2003, and February 10, 2004.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's orders and final judgment.

**AFFIRMED.**

13